SALVATORE REALMUTO AND JEANETTE REALMUTO, PLAINTIFFS-RESPONDENTS, v. STRAUB MOTORS, INC., A CORPORATION, DEFENDANT-APPELLANT.

Argued June 4, 1974—Decided July 9, 1974.

338

*Mr. William C. Oakerson* argued the cause for defendant-appellant (*Messrs. Wise, Blankenhorn, Laurie & Oakerson,* attorneys; *Mr. Oakerson,* of counsel and on the brief).

*Mr. Thomas E. Hood* argued the cause for plaintiffs-respondents (*Messrs. Seaman, Clark, Levine, Addy & Hood,* attorneys; *Mr. Hood,* of counsel).

The opinion of the Court was delivered by

HALL, J. This product liability case derives from the sale in 1970 of a used 1965 automobile to plaintiff Salvatore Realmuto (the buyer) by the defendant dealer. The suit was for personal injuries to the buyer, with a *per quod* claim by his wife, due to an accident claimed to have resulted from malfunction of the car's accelerator-carburetor mechanism. The dealer had installed a rebuilt carburetor prior to the sale, which installation required disconnection and reconnection of the mechanism. Plaintiffs' factual thesis was that this work had in some way been done so as to result in a defect which caused the malfunction. They presented no expert testimony and the evidence was entirely circumstantial.

The case raised the novel question of the applicability of strict liability in tort, *Restatement, Torts 2d* § 402A (1965), to a retail seller of a used chattel. Plaintiffs' complaint and the paragraph of the pretrial order specifying the issues to be determined were limited to two theories — negligence and strict liability. Although clearly intended as a "defect" case, for some reason not manifest in the record, the theories of express warranty and implied warranty of merchantability under the Uniform Commercial Code, *N. J. S. A.* 12A:2–313 and 314, appear to have crept in at trial. Thereby further questions of scope and applicability of the claimed warranties in the circumstances of the sale of a used chattel and the interrelation of theories of strict liability in tort and of actions under the Code necessarily became involved.

None of these questions was passed upon in the trial court. Rather the trial judge granted the dealer's motion for judgment at the end of the case, *R.* 4:40–1, concluding that, under any theory of action, plaintiffs had shown only the occurrence of an accident and that there was insufficient evidence of "the proximate cause of the accident" to take the case to the jury, *i. e.*, that the proofs were not adequate to permit a jury to find that the accident was caused by the alleged defect or the breach of a warranty. The Appellate Division reversed by a divided vote in unreported opinions. The majority held the evidence was sufficient to withstand the motion for judgment, apparently treating the case, although the opinion is not entirely clear, as an action based on breach of an express warranty. The dissent agreed with the trial judge, but dealt with the case principally as one grounded in strict liability in tort. Defendant's appeal is here as of right by reason of the dissent. *R.* 2:2–1(a)(2).

The buyer's testimony took this tack. When considering buying the car, defendant's salesman provided a road test during which the motor "sputtered." The salesman said it had to do with the carburetor and would be fixed. The buyer then signed a purchase agreement and the car was delivered

to him a few days later, at which time he was advised a re-built carburetor had been installed. The vehicle operated satisfactorily during the next five days involving about 140 miles of driving. On the sixth day while coming home from work, the motor "sputtered" again. He applied some pressure to the accelerator pedal and in a matter of seconds the car generated tremendous speed. The pedal did not release when foot pressure was removed and manual lifting of the pedal had no effect on the acceleration of the motor. The vehicle careened down the road and could not be controlled. It finally struck the center barrier, overturned and was substantially demolished. The buyer's later inspection of the remains disclosed, he said, that the accelerator-carburetor linkage was bent and the spring, designed to return the pedal to a raised position and at the same time close the carburetor intake valve so that the motor would only idle, was missing.

■■ The buyer's only testimony about any express warranty — and, indeed, the only explicit reference in the entire transcript to the subject of warranties, except for the judge's summary of the bases of action in his oral decision on the motion for judgment,[1] is found in eight lines wherein he identified as the salesman's writing the phrase "30 day warranty" found on the face of the sales agreement and stated that the salesman told him "it would cover parts and labor for thirty days. One hundred per cent."[2]

---

[1] Unfortunately the stenographer did not transcribe the arguments on the various trial motions during which the subject may have been discussed.

[2] The salesman also wrote on the face of the agreement "Full State Insp[ection] Gu.[arantee]" (in effect required by *N. J. S. A.* 39:10-26 to 30) and "two years Dis[count] 20% parts and labor." It is clear enough that all three of these promises were part of the sale bargain and amount to express warranties of some sort. The back of the agreement contained the following printed language: "It is expressly agreed that there are no warranties, express or implied, made by either the selling dealer or the manufacturer on the motor

Defendant's general manager, a former mechanic and its only witness, did not attempt to explain the cause of the mishap. The demolished automobile was not examined by the defendant who knew nothing of the accident until a claim was made quite a time thereafter when the car was apparently no longer available. The witness described the intended functioning of the carburetor, accelerator pedal and linkage mechanism and agreed that the linkage had to be disconnected and reconnected when the rebuilt carburetor was installed. The mechanic who did the work could not be identified. The manager admitted that, if the spring were missing, the pedal would not return of itself to a raised position and the carburetor valve would remain open, but said this could be corrected by the driver lifting the pedal with his foot, which the buyer had testified was unavailing in this instance. Defendant made no effort to show that any conduct of the buyer contributed to the accident.

We are convinced that, from the evidentiary standpoint, the majority of the Appellate Division was correct in concluding that there was sufficient evidence and permissible inferences therefrom to withstand defendant's motion for judgment and that this is true with respect to all conceivable bases of action against the dealer. The approach on such a motion is, of course, consideration of all the evidence and legitimate and reasonable inferences therefrom in the light most favorable to the plaintiff. *Dolson v. Anastasia,* 55 *N. J.* 2, 5 (1969). The question in all instances is one of factual causation — the relation of the harm to some act or omission of the defendant. The inference is practically

---

vehicle, chassis, or parts furnished hereunder except, in the case of a new motor vehicle the warranty expressly given to the purchaser upon the delivery of such motor vehicle or chassis." This attempted disclaimer of any express warranties is inoperative since to give effect to the disclaimer would be unreasonable in view of the writing on the face. *N. J. S. A.* 12A:2–316(1). Nor is it effective to disclaim an implied warranty of merchantability because the language does not mention merchantablity and is not "conspicuous." *N. J. S. A.* 12A:2–316(2).

irresistible, in the light of defendant's testimony as to the makeup and functioning of the carburetor-accelerator mechanism, that the accident was caused by some malfunction of that mechanism resulting in uncontrollable acceleration of the vehicle. In view of the fact that defendant, in installing the rebuilt carburetor, concededly disengaged and reengaged the linkage mechanism between the carburetor and the accelerator pedal, that the violent and dangerous malfunction occurred within a relatively few miles thereafter and that defendant offered no other explanation for the mishap, a jury might properly infer, although not required to do so, that defendant's work on the mechanism was improperly or defectively done so as to somehow have resulted in the malfunction.

This is clearly enough to take the case to the jury, without any expert testimony on the subject, on the theory of negligence, *M. Dietz & Sons, Inc. v. Miller,* 43 *N. J. Super.* 334 (App. Div. 1957), and on the theory of strict liability in tort under *Restatement, Torts 2d* § 402A, *Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358, 409–412 (1960); *Cintrone v. Hertz Truck Leasing & Rental Service,* 45 *N. J.* 434, 451–453 (1965). (Although the latter two cases spoke in the language of implied warranty of merchantability and fitness for use, they were "defect" cases and have since been interpreted to have been really grounded in the then developing strict liability concept. See *Heavner v. Uniroyal, Inc.,* 63 *N. J.* 130, 146–152 (1973).) Even less is required to reach the jury in a breach of express warranty case. While the causal relation of the end result to the breached guarantee must be shown, mere failure of promised performance is enough without proof of any defect. *Collins v. Uniroyal, Inc.,* 64 *N. J.* 260, 262 (1974). As far as the theory of implied warranty of merchantability is concerned, our courts have said that it is a concept synonymous with strict liability in tort in a "defect" case. *Lamendola v. Mizell,* 115 *N. J. Super.* 514, 526 (Law Div. 1971). See *Cin-*

344

*trone v. Hertz Truck Leasing and Rental Service, supra* (45 *N. J.* at 452).

The new trial required by this conclusion will necessarily involve questions previously adverted to concerning the applicability of strict liability in tort and breach of warranty principles to consumer actions for personal injuries in the field of the sale of used chattels. We make some brief observations about these questions.[3] As there has been little definitive development of the law in this field, our comments will consequently be quite general.

Treating first of strict liability in tort, one leading text, 2 *Frumer and Friedman, Products Liability*, § 16A [4][b][IV], pp. 3–282 to 3–283, comments that § 402A: does not expressly state whether the rule of strict liability in tort applies to the seller of a defective used product and says that "[n]o case has yet applied the rule * * * to the seller of a used product." The authors go on to point out that our *Cintrone* case did apply the rule to the lessor of a motor vehicle and that it would therefore seem the same rule should be applied to the seller of a defective used product. The strict liability in tort rule is, of course, grounded in reasons of public policy. *Restatement, Torts 2d* § 402A, comment *c*. It may well be that these policy reasons are not fully applicable to the seller of a used chattel — for example, the buyer cannot be said to expect the same quality and durability in a used car as in a new one and so the used car dealer should not be held to the same strict liability as the seller of new automobiles. We need not reach that broad question here, for we are of the view that a used car dealer ought to be subject to strict liability in tort with respect to a mishap resulting from any defective work, repairs or replacements he has done or made on the vehicle before the

---

[3]There is no doubt of the applicability of the negligence theory; a used car dealer has the duty of reasonable inspection, testing and warning of any defects, as well as that of reasonable care with respect to any repairs or replacements he may make to the vehicle.

sale and we so hold. That in essence is the instant case, at least as it was set forth in the pleadings as a "defect" case.

We turn finally to the questions relating to the cause of action for breach of an express warranty.[4] We preface our observations by reiterating the underlying holding in part II of the *Heavner* opinion (63 *N. J.* at 142–157, especially at 146–157). We there concluded (at 156) that when the gravamen of a consumer suit against a manufacturer or retailer for consequential personal injuries and property damage is a *defect* in the article, the action will be considered as one founded on strict liability in tort, whether the cause of action is pleaded in express or implied warranty, in strict liability, or in any combination of these theories.

This is not to say that an injured consumer, who cannot prove or does not desire to rely entirely on a defect, may not sue, solely or alternatively, under the Uniform Commercial Code for a causally related breach of a pertinent express warranty. *Collins v. Uniroyal, Inc.*, 126 *N. J. Super.* 401 (App. Div. 1973), *affirmed* 64 *N. J.* 260 (1974), was such a case. It involved, however, the blowout of a new tire, which, it was found, had been guaranteed against.[5]

On an express warranty theory, the instant case presents many questions. We will only pose some of them that occur to us for the consideration of counsel and the judge at the new trial. The trial record and the briefs are not sufficiently directed to them to permit meaningful answers and we prefer not to deal with them in the abstract. An obvious query goes to the scope of the written terms of the sales agreement providing a "30 day warranty." There is no specification of what is guaranteed. Does it mean that the used car is in

---

[4]If plaintiffs intend to rely on this theory at the new trial, the pleadings should be amended accordingly and a new pretrial order entered.

[5]Query, whether the same result could not have been achieved in *Collins* on a theory of strict liability under *Restatement, Torts 2d* § 402B, Misrepresentation by Seller of Chattels to Consumer.

perfect mechanical condition and will continue so and operate properly for 30 days or does it mean something less? Is such a promise confined to the special work the dealer did on it? Also, did the salesman's oral representation to the buyer that defendant would fix the carburetor problem create an express warranty? And did the subsequent oral representation that the written warranty meant "parts and labor, 100 per cent" contemplate an attempted limitation of liability so as to exclude consequential damages? These may be jury questions, depending on the state of the evidence. Moreover, is any such attempted limitation valid in the light of *Collins?* Should the policy reasons dictating the holding of that case that such a limitation is unconscionable and void apply in the case of the sale of used chattels? Is the 30 day time limitation too short as a matter of policy? Since the seller and buyer can make any bargain they wish, if they consciously desire — as, for example, a sale "as is" negating all warranties in a used chattel case — should they not be permitted to agree on a limited warranty and be bound by its limitations?

It also must not be forgotten that a cause of action for breach of warranty under the Code comes legally burdened with certain statutory conditions and limitations — what Dean Prosser has called, with respect to consumer as distinct from commercial transactions, "far too much luggage in the way of undesirable complications * * *." *Prosser, Law of Torts* (4th ed. 1971) § 98, p. 656. We refer particularly to the limitation on beneficiaries of warranties, *N. J. S. A.* 12A: 2–318, the requirement of notification of breach within a reasonable time, *N. J. S. A.* 12A:2–607(3)(a), and the matter of the right to disclaim or limit warranties dealt with in *N. J. S. A.* 12A:2–316 and 719(3). See *Heavner v. Uniroyal, Inc., supra* (63 *N. J.* at 154–155); *White and Summers, Uniform Commercial Code* (1972) § 9–6, p. 286. What effect, if any, these limitations and conditions have on plaintiffs' warranty claims remains to be developed at the retrial.

The judgment of the Appellate Division is affirmed.

*For affirmance* — Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.

*For reversal*—None.