133 N.J. Super. 277 (1975)
336 A.2d 62
FLORENCE L. TURNER, ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF THOMAS W. TURNER, PLAINTIFF,
v.
INTERNATIONAL HARVESTER COMPANY, A DELAWARE CORPORATION, AND HALL & FUHS, INC., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
March 7, 1975.
*282 Mr. Mitchell Glucksman for plaintiff.
Mr. Harold I. Braff for defendant International Harvester Company (Messrs. Braff, Litvak, Ertag, Wortmann & Harris, attorneys).
Mr. Frank L. Brunetti for defendant Hall & Fuhs, Inc. (Messrs. Lamb, Hutchinson, Thompson & Chappell, attorneys).
DREIER, J.D.C., Temporarily Assigned.
Defendant Hall & Fuhs, Inc. has moved for summary judgment in this product liability case. The motion shall be granted in part and denied in part for the reasons following.
On or about December 2, 1969 plaintiff's decedent, Thomas W. Turner, acquired a 1967 IHC tractor-truck manufactured by defendant International Harvester Company. There is an issue in the case whether the truck was purchased from defendant Hall & Fuhs, Inc., as set forth in an agreement of sale (Hall & Fuhs, Inc. as the "seller" and *283 Turner as the "buyer"), or whether the truck was in fact purchased from Turner's friend, one Richard W. Carman, or his corporation R.W. Carman, Inc. According to the affidavit of Carman filed in opposition to the motion the truck in question had been traded in by him on a new truck purchased from Hall & Fuhs, Inc. in or about October 1969, and the used truck was delivered to Hall & Fuhs, Inc's place of business during the first week in October 1969. He further alleges that at no time was the truck delivered directly from Carman or his company to Turner. Since this court is enjoined by R. 4:46-2 and the cases interpreting the rule to grant summary judgment only when there is no issue of a material fact, and to grant all favorable inferences to the party opposing such motion, it will be assumed for the purpose of this motion that the truck in question was purchased from Hall & Fuhs, Inc. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
The truck was of the type where the engine is located beneath the cab; to work on the engine the cab must be raised and propped or counter-balanced. Two years and four days after taking delivery of the truck, that is, on or about December 6, 1971, plaintiff's decedent was working on the engine. While he was under the cab (which was in its raised position) the cab suddenly collapsed and fell upon him. He died from the ensuing injury. Plaintiff, his widow, sues on behalf of herself and their children for the death on the theories of (a) strict liability, (b) negligence and (c) breach of warranty.
The bill rendered by Hall & Fuhs, Inc. to plaintiff's decedent for the truck in question stated that the sale encompassed:

USED TRACTOR SOLD AS IS
One (1) used 1967 IHC model CO4000D Serial G226064
The price was $14,000 plus sales tax.
The summary judgment motion of defendant Hall & Fuhs. Inc. is based upon two theories. First, that the designation *284 of the sale "as is" in the sale of a used vehicle precludes any claim alleging a defective product; second, the relationship between the parties was that of financing agent and purchaser from a third party and not that of seller and buyer. With respect to the second basis, as noted above this court has determined that the contract and supporting documents (installment sale and security agreement, bill, etc.) signed or issued by Hall & Fuhs, Inc. designate it as the "seller." A sufficient issue of fact is thus raised as to the status of the parties that summary judgment would be improper here on that basis. Therefore, the real questions on this motion are the effect of the sale of used goods and of the words "as is" upon the three causes of action alleged by plaintiff.

I
We will first consider the third claim, that of breach of warranty, for it is the easiest to dispose of. The Uniform Commercial Code in N.J.S.A. 12A:2-316 covers the subject of exclusion or modification of warranties. One subsection reads as follows:
(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
The next subsection, however, covers the situation now before the court and states:
(3) Notwithstanding subsection (2)
(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and * * * *285 Circumstances here did not indicate other than the normal statutory exclusion of warranties. The New Jersey Study Comment number 3, citing prior New Jersey case law, shows that this section merely restated the then existing law of the State as of the date the Code was enacted. It therefore appears that plaintiff's claim for breach of warranty must be dismissed, because the sale was for used goods explicitly noted "as is."

II
Several recent cases have discussed the necessity for proving a specific defect which caused an injury in order to substantiate a claim in strict liability for tort in product liability actions. See Moraca v. Ford Motor Company, 132 N.J. Super. 117 (App. Div. 1974), aff'd 66 N.J. 454 (1975). That issue, which will no doubt be central to the trial of this matter, is not a proper subject of this motion since discovery has not yet been concluded. The court will assume for the purpose of this motion either that a specified defect existed which caused the cab to fall, or sufficient circumstantial proofs could be shown to substantiate the existence of some defect. There is no question that such defect, if it existed, manifested itself over two years after the truck had been purchased by plaintiff's decedent. Whether this delay exceeded the time within which it was reasonable to expect the cab catch or counterbalance not to be defective is a jury question and will not be decided here. Moraca, at p. 460. If such is shown at trial the tests of liability set forth in Moraca as to remoteness of time would thus be satisfied. See also, Scanlon v. General Motors, 65 N.J. 582 (1974). There also is little question but that a dealer in used equipment is strictly liable for defective work repairs or replacement that such dealer has performed on the vehicle before the sale. Realmuto v. Straub Motors, 65 N.J. 336, 344-345 (1974). What is before this court, however, is the very question left open in Realmuto, where the Supreme Court stated:
*286 * * * The strict liability in tort rule is of course, grounded in reasons of public policy. Restatement, Torts (2d) § 402A, comment c. It may well be that these policy reasons are not fully applicable to the seller of a used chattel  for example, the buyer cannot be said to expect the same quality and durability in a used car as in a new one and so the used car dealer should not be held to the same strict liability as the seller of new automobiles. We need not reach that broad question here, for we are of the view that a used car dealer ought to be subject to strict liability in tort with respect to a mishap resulting from any defective work, repairs or replacements he has done or made on the vehicle before the sale and we so hold. That in essence is the instant case, at least as it was set forth in the pleadings as a "defect" case. [at 344-345; emphasis supplied]
The germinal statement of the rule of strict liability in tort is found in the Restatement, Torts 2d, § 402A, although the New Jersey courts have expanded the rule beyond these limits:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold * * *
As the Supreme Court in Realmuto noted, quoting from 2 Frumer and Friedman, Products Liability, § 16A[4][b][iv], at 3-282 to 3-283, no case in New Jersey has yet applied the rules of strict liability in tort to the seller of a used product. Both the Supreme Court and the authors of the text note that the strict liability rules have been applied in Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 451-453 (1965), where a defect in a leased motor vehicle was held to be a sufficient basis for applying the rule of strict liability in tort. In New Jersey it appears that the Cintrone case and the recent Realmuto case are the closest that our courts have come to applying this rule to a seller of a used chattel.
*287 Nationally, the cases are collected in Annotation, "Products Liability  Used Products," 53 A.L.R.3d 337 (1973).
* * * [C]ourts may consider as a liability-limiting factor the requirement that the used product be unreasonably dangerous, by applying the test of whether an ordinary purchaser of the particular product, considering its age and condition, would regard it as unreasonably dangerous when sold. [Comment at 340]
In Pennsylvania, for example, plaintiff buyer purchased a ten-year-old car from a dealer. Within 15 minutes after leaving the dealer's place of business in the car, brake failure caused an accident in which plaintiff sustained injury. As plaintiff had not altered the condition of the car since taking delivery, a good cause of action was found under § 402A of the Restatement. Lewis v. E.F. Moore, Inc., 87 Montg. Cty. L.R. 379 (Pa. 1967). A similar cause of action went to the jury in Grady v. Kenny Ross Chevrolet Co., 332 F. Supp. 689 (D.C. Pa. 1971), applying Pennsylvania law where plaintiff's decedent had died of carbon monoxide poisoning allegedly resulting from a defective tail pipe assembly in a used car purchased from defendant dealer. But see Cornelius v. Bay Motors, Inc., 258 Or. 564, 484 P.2d 299 (Sup. Ct. 1971), wherein the court expressly reserved ruling on whether strict liability under § 402A applied to sellers of used cars, while upholding a jury verdict for defendant dealer who had sold a seven-year-old car whose brakes failed on the day of purchase. The concurring opinion in that case suggests that a used-car dealer should not be regarded as making any implied representations since that is not the expectation or understanding of either the buyer or seller in such a transaction. See also, Ikerd v. Lapworth, 435 F.2d 197 (7 Cir.1970), in which strict tort liability was held inapplicable to a new car dealer who sold a car to a used-car dealer, who thereafter sold it to the injured plaintiff, because the first dealer had sold the car along with several others, all "as is," and was found to have relied upon the second dealer to inspect and *288 discover any defects before resale to third parties. In dictum the court noted:
Plaintiffs cite numerous cases in which automobile manufacturers and dealers have been held liable for injuries resulting from the sale of an automobile in a defective condition to a consumer-customer. They conclude from these cases that the seller of a used-car is negligent, or accountable under the doctrine of strict product liability if he sells the used car in a defective condition to one who he should know will use or resell it without first remedying the defect * * *. [at 201]
This court must therefore come to grips with the underlying policy considerations and determine what should be the rule when applied to the case at bar. Three questions appear relevant: (1) In a sale of used goods, should the seller be held strictly liable in tort for defects, unknown at time of sale, that affect the safety (as opposed to economic value of the bargain) of ordinary buyers (and third persons)? Expressed in terms of the Restatement, are safety defects, by their very nature, unreasonably dangerous to ordinary consumers? (2) If so, should an "as is" disclaimer effectively insulate the seller of used goods from such liability to buyers (and third persons) by transferring the burden of all risks to the buyer? (3) If not, should such a disclaimer effectively insulate the seller of used goods from strict liability where the particular buyer was knowledgeable and in as good a position as the seller (or better) to guard against all risks of the product? That is, as to this buyer, was the product unreasonably dangerous?
We will first consider whether this is the type of case for the application of strict liability in tort. An economic analysis of enterprise liability, which includes direct as well as indirect costs, would charge those in the business of selling a defective product with responsibility for all harms, physical and economic, which result from its use. Baxter, "The SST: From Watts to Harlem in Two Hours," 21 Stanf. L. Rev. 1 (1968); Coase, "The Problem of Social Cost," 3 J. Law & Econ. 1 (1960). To a considerable extent  with respect to *289 new goods  the manufacturer bases the cost of his product on his expenses, which include damages caused by the product and insurance to cover those damages. This cost is spread among all the customers for that product; it reflects the justifiable expectations of customers regarding safety, quality and durability of new goods. Sellers of used goods may similarly distribute their costs of doing business which, in turn, will reflect what is considered by the public to be justifiable expectations regarding safety, quality and durability of used goods.
As suggested by the court in Realmuto and the A.L.R. annotations, realistic expectations of quality and durability will be lower for used goods, commensurate with their age, appearance and price.
However, safety of the general public demands that when a used motor vehicle, for example, is sold for use as a serviceable motor vehicle (and not as junk parts), absent special circumstances, the seller be responsible for safety defects whether known or unknown at time of sale, present while the machine was under his control. Otherwise, the buyer and the general public are bearing the enterprise liability stemming from introduction of the dangerously defective used vehicle onto the public highways. Public policy demands that the buyer receive a used chattel safe for the purpose intended (where no substantial change will occur prior to reaching the buyer or foreseeable consumer). See discussion in 2 Frumer & Friedman, Products Liability, supra:
* * * It is conceded that a buyer of a used car, for example, cannot expect it to last as long as a new one. But it can be argued that he is entitled to expect that there is no latent defect in the brakes or other parts of the car. [§ 19.03[5] at 5-129]
Justifiable expectations for safety run to ordinary parts expected to receive regular maintenance and replacement, e.g., brake shoes and linings, steering linkage, exhaust system, etc. On the other hand, surface dents, rust or metal fatigue resulting from mere old age would be defects the *290 risk of which a buyer reasonably may be expected to absorb without undue threat to the public at large.
It is also significant in this case that the safety defect seemingly had nothing particular to do with the truck qua motor vehicle. Unlike virtually all of the cases dealing with the topic of dealer liability for used motor vehicles, this defect did not involve the ordinary use of the truck insofar as its operation on the highway was concerned. The "defect," if any, in the cab latch was collateral; it could just as well have been a defective latch on an overhead garage door or a piece of stationary machinery. Cf. Rodrigues v. Elizabeth-town Gas Co., 104 N.J. Super. 436, 445-446 (App. Div. 1969). It is clear, therefore, that this is an "ordinary" product liability problem, not affected by theories of motor vehicles as "dangerous instrumentalities," and special only in that it deals with reasonable expectations of buyers of used goods.
That there is room for further definition of the "unreasonably dangerous" standard of the Restatement rule, and of its application to used products in our society (which increasingly sets a premium on recyclability of resources) is demonstrated by the A.L.R. annotation comment quoted earlier (53 A.L.R.3d at 340), as well as by further discussions in recent New Jersey and out-of-state products liability opinions. This very language, however, has been questioned by the New Jersey Supreme Court in its recently rendered opinion in Brody v. Overlook Hospital, 66 N.J. 448 (1975). There, the Appellate Division had held that defendants were under an obligation only to use due care and "were not accountable under a theory of strict liability in tort" for supplying blood infected with viral hepatitis. The Appellate Division determined that Restatement § 402A governed the case, but that it had not been shown that the product (blood) was "unreasonably dangerous." Brody v. Overlook Hospital, 127 N.J. Super. 331, 339 (1974), aff'd 66 N.J. 448 (1975). The Supreme Court (at 451), however, added the following language to its affirmance:
*291 * * * but for present purposes we need not consider whether its requirement of a showing that the product was "unreasonably dangerous" is to be deemed generally applicable in other contexts. Cf. Glass v. Ford Motor Co., 123 N.J. Super. 599 (Law Div. 1973); Cronin v. J.B.E. Olson Corporation, 8 Cal. 3d 121, 104 Cal. Rptr. 433, 501 P.2d 1153 (1972); Note, 5 Seton Hall L. Rev. 152 (1973).
The cited Glass case had held that a requirement that the product be shown "unreasonably dangerous" had no role in the common law concept of strict liability in tort. Moreover, in quoting from the Cronin case (cited by the Supreme Court), the court in Glass found that an "unreasonably dangerous" qualification burdens "the injured plaintiff with proof of an element which rings of negligence," and this would influence a jury "to employ the `reasonable man' standard and arrive at a conclusion that an `ordinary consumer' either would, or would not have expected the defective condition of the particular product," (emphasis in original). This court agrees that if such were the sole function of the "unreasonably dangerous" qualification, it serves no useful purpose. But, there are different and necessary functions for this qualification prerequisite for a finding of strict liability in tort for sale of used products.
The Restatement rule without the "unreasonably dangerous" qualification has been criticized as creating a trial situation "too imprecise for judicial application." 5 Seton Hall L. Rev. 152, 166 (1973). Even the Cronin court noted that the "unreasonably dangerous" standard appears in two places in the Restatement rule, first where it is quoted above, and again in its definition of what is a "defective condition." 104 Cal. Rptr. at 441, 501 P.2d at 1161. The Restatement, comment (g), states that such is a condition "not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." It is only where there is an unreasonable danger of personal injury in the defective product that recovery can be founded on the rule of strict liability in tort, and this should be especially so when dealing with used goods. Only by this word "unreasonable" is the court or *292 jury permitted an inquiry into the nature of the product, its age and condition, and thus able to set a standard against which the defect can be measured.
Should a simple "as is" disclaimer effectively insulate the dealer from a claim of strict liability in tort following an accident resulting from a safety defect present in the vehicle when it was in the control of the dealer? When selling to the ordinary consumer, the answer must be No. Bargaining power and ability to protect one's interests are generally disproportionate as between the buyer of used goods and one in the business of selling them. While freedom to contract need not be impaired if a buyer wishes to contract away his right to protection, an unequivocal waiver of safety defects must be shown (see the discussion with respect to waiver of tort claims under section III of this opinion, infra). Otherwise, when the additional indirect costs will be borne by the public through insurance costs, a decent regard for the public safety requires the thumb of the State to be on the buyer's side of the scale. Cf. Henningsen v. Bloomfield Motors, 32 N.J. 358 (1960).
The third question also raises a jury issue. It may be found that the buyer in this case was (or represented himself to be) knowledgeable about this product because of his background or experience. This will not necessarily result from the transaction being denominated "commercial"  see Monsanto Co. v. Alden Leeds, 130 N.J. Super. 245 (Law Div. 1974). Also, the effect upon plaintiff and her family, and upon injured persons in general, is no less because the injury occurred in a nonconsumer atmosphere. In fact, the pleadings and affidavits submitted here suggest that plaintiff's decedent may have been personally familiar with the particular truck he bought. The goods should be viewed, not in the abstract, but as they affect a particular seller, purchaser or user, and the circumstances of the sale.
Use of the "unreasonably dangerous" standard, whether viewed from the general statement of the rule or the definition of a dangerous condition, permits a court to *293 look both at the sophistication of the injured purchaser and the reasonable expectations of the seller to determine whether the strict liability rule should be applied.
Looking at the used automobile situation, one can readily envision an antique car buff or "hot rod" enthusiast purchasing a car which is defective in many respects and where the relationship between the buyer and seller is such that both reasonably expect that all aspects of the automobile will be separately appraised and all defects corrected by the purchaser. In this connection see Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 62, 27 Cal. Rptr. 697, 700, 377 P.2d 897, 900, 700 (Sup. Ct. 1963), in which Justice Traynor stated that a manufacturer "is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being."
Even with respect to the sale of a truck, the actual situation of the parties to the contract may present a question. A used truck purchased by a large trucking company known by both buyer and seller to have extensive repair facilities might be expected to undergo great scrutiny only by the buyer, while a similar truck purchased by a merchant to make his retail deliveries might not reasonably be expected to be so examined unless special circumstances exist. Thus, in some circumstances the relationship of the parties and apparent sophistication of the purchaser might indicate that the defect did not present an unreasonable danger to the particular purchaser as user of the product. In others the purchaser's conduct in not discovering or correcting a defect which a reasonable person of his background and experience should have corrected might warrant a finding that the defect was not unreasonably dangerous. (These latter aspects of the "unreasonable" danger qualification, however, should be treated within the area of contributory negligence, which in the appropriate case may be a defense to a claim of strict liability. Cintrone v. Hertz Truck Leasing & Rental Service, supra, 45 N.J. at 457-459; Bexiga v. Havir Mfg. *294 Corp., 60 N.J. 402 (1972); Restatement, Torts 2d, § 402A, Comment (n) at 356.) Thus, in these unusual cases the "unreasonably dangerous" qualification has a very practical use in stating the rule for strict liability in tort. With this "unreasonably dangerous" element intact, the Restatement rule is as applicable to the sale of a used product as to the sale of a new product. The failure of the Supreme Court to use the "unreasonably dangerous" standard in its statements of the rule of strict liability in tort (e.g., Scanlon v. General Motors Corp., 65 N.J. 582, 590 (1974)), should not be taken as a negation of its usefulness in the appropriate case.
On the record before this court, defendant dealer has not shown that special circumstances of this sale constituted either an express or implied waiver of this buyer's reasonable expectations regarding the absence of safety defects. Thus, summary judgment must be denied on the strict liability claim.

III
With respect to the claim for negligence, the court in Realmuto v. Straub Motors, supra, set forth the standards to be applied:
There is no doubt of the applicability of the negligence theory; a used car dealer has the duty of reasonable inspection, testing and warning of any defects, as well as that of reasonable care with respect to any repairs or replacements he may make to the vehicle. [65 N.J. at 344, n. 3; emphasis supplied]
An annotation, 6 A.L.R.3d 12, § 10 at 43-47, deals with this matter also, commenting that:
* * * [a] seller of a used or secondhand product  especially, but not exclusively, a motor vehicle  has often been held to have a duty to test or inspect it, and to be liable for injuries resulting from the omission of proper tests or inspections.
A current model, low-mileage automobile purchased by a consumer from a dealer in such automobiles is subject to *295 nearly all of the expectations on the part of the public as is a new motor vehicle purchased under similar circumstances. As the vehicle's age increases, however, such expectations will tend to decrease. So, too, with other products. This is true especially where the sale of motor vehicles is concerned, considering the tremendous volume of sales evidenced by even the most casual perusal of the used car sections of a newspaper. It has been informally estimated that for every new car purchased in this country, five are traded used. "King of the Iron Merchants," New York Times Magazine, March 2, 1975, p. 12 at 33. To preclude recovery merely because of the used nature of a product would, therefore, be to defeat the interests of the public. A dealer in used trucks is subject to similar expectations. Of course, there are additional elements that must be proven in the negligence claim that need not be proven under the strict liability in tort cause of action described above, but a cause of action has been stated in the complaint.
The "as is" notation, however, adds an additional element to the negligence aspects of this case. In Monsanto Co. v. Alden Leeds, supra, 130 N.J. Super. at 254, this court held that disclaimers of warranties, if not unconscionable, may be enforced in commercial settings. Here, there is no allegation of unconscionability. In section I of this opinion the warranty disclaimer has been held to have its statutory effect. In section II, it was noted that an unequivocal waiver was necessary to defeat a claim of strict liability in tort. But, does a disclaimer of statutory warranties also act as a waiver of both tort claims in strict liability and negligence? Without any language of waiver, and without any evidence before this court that the "as is" language was meant to serve as an intentional relinquishment of a known right, such effect will not be implied. Cf. Gindy Mfg. Corp. v. Cardinale Trucking Corp., 111 N.J. Super. 383 (Law Div. 1970), where the clause was found not to have even its statutory effect of removing warranties under the peculiar facts of that case.
*296 This determination, however, does not fully answer the question of the effect of the "as is" statement, for it will have a very real evidentiary effect at the trial. What conditions did the "as is" designation disclaim? A jury must eventually determine what was reasonable with respect to any proven danger present in a product sold "as is." Did the parties understand that the "as is" designation applied only to body damage, gas mileage, worn tires or other such problems that could be discerned by a reasonable inspection or test drive? Was it limited to performance rather than safety defects? Was the designation intended to cover all defects? See, for example, Chamberlain v. Bob Matick Chevrolet, Inc., 4 Conn. Cir. 685, 239 A.2d 42 (Cir. Ct. 1967); Varkell v. United States, 334 F.2d 653, 167 Ct. Cl. 522 (Ct. Cl. 1964); Mulder v. Casho, 61 Cal.2d 633, 39 Cal. Rptr. 705, 394 P.2d 545 (Sup. Ct. 1964); Hembree v. Southard, 339 P.2d 771 (Okl. Sup. Ct. 1959); Armour v. Haskins, 275 S.W.2d 580 (Ky. Ct. App. 1955); Byrd v. Harry Sommers, Inc., 87 Ga. App. 663, 75 S.E.2d 287 (Ct. App. 1953); Gaidry Motors, Inc. v. Brannon, 268 S.W.2d 627 (Ky. Ct. App. 1953); and cf. Benton v. Sloss, 38 Cal.2d 399, 240 P.2d 575 (Sup. Ct. 1952), referring to California statutory requirements that a used car dealer inspect brakes before resale.
Defendant Hall & Fuhs, Inc. alleges that the cause of the accident was a design defect, and thus is the responsibility of the manufacturer. Whether this is so and whether a reasonable inspection, testing or warning of the defect had or had not been accomplished is not now before the court, but as a matter of law, from the affidavits and supporting documents, this court cannot say that the defendant dealer is free from negligence.
Plaintiff's attorney should present an order denying summary judgment on the issues of strict liability in tort and negligence, and granting summary judgment on the issue of breach of warranty, pursuant to R. 4:42-1.