887 A.2d 159 (2005)
381 N.J. Super. 519
Jose AGURTO and Scherazade Agurto, his wife, Plaintiff-Appellant,
v.
Valer GUHR, Defendant-Respondent, and
Special Machinery Corp., Baker Adhesive Company, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 2005.
Decided December 9, 2005.
*160 Terrence Smith, East Hanover, argued the cause for appellants (Davis, Saperstein & Salomon, attorneys; Marc C. Saperstein, Teaneck, and Mr. Smith, on the brief).
Jeffrey W. Mazzola, New York, NY, argued the cause for respondent (William E. Staehle, attorney; Mr. Mazzola, on the brief).
Before Judges COBURN, LISA and S.L. REISNER.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
Plaintiff, an employee of Baker Adhesive Co., was seriously injured when his arm was drawn into a glue mixing machine that Baker had bought from defendant Valer Guhr. Plaintiff sued Guhr under the Product Liability Act, N.J.S.A. 2A:58C-1 to -11, contending that Guhr was a product seller who was strictly liable for any defect in the mixing machine. The trial judge granted Guhr's motion for summary judgment, concluding that the evidence was insufficient to establish that he was a product seller as defined in the Act. N.J.S.A. 2A:58C-8.
We conclude that the trial judge erroneously viewed the evidence in the light most favorable to the defendant, contrary to the well-established summary judgment standard. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Giving plaintiff the benefit of all favorable inferences, he was entitled to a trial on the issue of whether defendant was a product seller. Because defendant's alleged status as a seller under the Act is an issue of duty which the court must decide, see Suter v. San Angelo Foundry, 81 N.J. 150, 172, 406 A.2d 140 (1979), and since it is a discrete issue readily separable from the underlying personal injury suit, the trial judge should have conducted a bench trial on the issue pursuant to R. 4:46-3(b).[1]
Moreover, under all the circumstances, we find that plaintiff is entitled to an opportunity to re-depose the defendant who, on the day of the summary judgment motion, served a certification and supplemental interrogatory answers contradicting his prior deposition testimony and setting forth facts he had not previously disclosed concerning his alleged non-involvement in sales of machinery. We therefore remand the case to permit further discovery, to be followed by a bench trial on the limited issue of whether plaintiff was a product seller within the meaning of N.J.S.A. 2A:58C-8. Plaintiff's right to a jury trial on the underlying product liability and *161 personal injury claim will depend on the outcome of the bench trial.

I
We briefly review the facts and procedural history of this matter. This action arose from an accident that occurred on October 30, 2000, while plaintiff, Jose Agurto, was operating a glue mixer or "disperser" at his place of employment, Baker Adhesive Company. While he was working on the mixer, the machine grabbed his shirt and pulled him in. As a result, his right arm became caught in the vat, was crushed, and had to be amputated. He sued Guhr, the seller of the mixer, and Special Machinery Corp., the manufacturer, on claims of strict liability and negligence.[2]
The facts relating to the strict liability claim are as follows. Guhr obtained the machine in 1992 from a company called Malcom-Nickol in lieu of payment for work he had done for that company. He kept the machine in his warehouse for five years and then sold it to Baker in 1997. The machine was manufactured by Special Machinery Corp., an entity that was defunct by the time of plaintiff's lawsuit. Hence, Guhr was not protected by the exemption in the Product Liability Act for a seller that can identify the manufacturer of the defective product. N.J.S.A. 2A:58C-9(b) and (c).
At his deposition Guhr testified that he was an electrician who worked as an independent contractor providing installation and maintenance services for Baker and similar companies. He testified that he worked on production and packaging machinery, such as "[r]ibbon blenders, dryers, dispersers [and] pumps." He admitted selling the machine in question to Baker and he admitted having additional machines in his warehouse.
In Guhr's deposition, he also admitted having sold at least three machines to other companies besides Baker since 2000, although he claimed that sales of machinery were a very small part of his business. He claimed he could not recall how many machines he had sold between 1995 and 2000.
Stewart, the president of Baker, testified at one point in his deposition that Guhr "[b]ought equipment for us and maintained it." He testified that "if we needed a machine, we would just go to Valer Guhr and say we needed a machine." But later in his deposition he testified that Baker had bought machines from Guhr. He was asked "Do you know how many other machines, if any, Baker Adhesive has purchased from Mr. Guhr over whatever period of time?" He answered "[p]robably all of them." He was then asked "[a]nd by that you mean to say that Baker Adhesive has probably purchased all of the mixing machines from Mr. Guhr at one point or another?" He responded "I would think so, yes." He also testified that Guhr was called to his company on an average of once a month to perform maintenance and repairs on the machinery.
After the depositions were completed, defendant moved for summary judgment. In a certification that was not provided to plaintiff's counsel until the day of the motion argument, Guhr attested that he had "occasionally put [Baker] in touch with used machine dealers for the purchase of dispersers. I have not profited from any purchase of machinery made by Baker Adhesive." *162 In supplemental answers to interrogatories, also served on plaintiff on the day of the argument, he attested "I have not sold machines to anyone in the past 15 years. At time [sic] I may have placed companies interested in buying machine [sic] with machine dealers, but I have not sold any machines." He also stated that "[t]o the best of my recollection over the past 15 years [the disperser in question] is the only machine that I sold to Baker. Over the past 20 years or so, I have placed Baker in touch with distributors... and facilitated Bakers' [sic] purchase of 3-4 machines, but they were not sold by Valer Guhr."
The trial judge granted summary judgment based on his conclusion that although there was some apparent contradiction in Stewart's testimony as to whether Baker purchased additional machinery from Guhr, his use of the word "probably" made his testimony too indefinite to create a material dispute of fact. The lack of any documentation that Guhr made other sales to Baker also led the judge to conclude that the record could not support a finding that Guhr was a product seller under the Act.

II
In deciding a motion for summary judgment, the trial court must determine whether the evidence, when viewed in a light most favorable to the non-moving party, would permit a rational fact-finder to resolve the dispute in the non-moving party's favor. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). The trial court cannot decide issues of fact but must decide whether there are any such issues of fact. Ibid.; R. 4:46-2(c). Our review of a trial court's summary judgment decision is de novo, applying the Brill standard. Prudential Property Ins. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).[3]
The critical issue in this case is whether Guhr was acting as a product seller when he sold the mixing machine to Baker. The Product Liability Act defines the term "product seller" as follows:
"Product seller" means any person who, in the course of a business conducted for that purpose: sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce.

[N.J.S.A. 2A:58C-8 (emphasis added).]
As we recognized in Becker v. Tessitore, 356 N.J.Super. 233, 812 A.2d 369 (App.Div. 2002), "[t]his definition encompasses entities within a product's chain of distribution and is consistent with most prior New Jersey case law ... and the common law" and hence we look to pre-Act cases in construing the Act. Id. at 247-48, 812 A.2d 369.
*163 Looking to case law that predated the Act, we find that strict liability has been applied to sellers of used equipment. See Realmuto v. Straub Motors, Inc., 65 N.J. 336, 344, 322 A.2d 440 (1974); Ortiz v. Farrell Co., 171 N.J.Super. 109, 116, 407 A.2d 1290 (Law Div.1979); Turner v. Int'l Harvester Co., 133 N.J.Super. 277, 289, 336 A.2d 62 (Law Div.1975); but see Santiago v. E.W. Bliss Div., 201 N.J.Super. 205, 226, 492 A.2d 1089 (App.Div.1985) (manufacturer that disposed of its used equipment was an occasional seller and not strictly liable).
Strict liability may also apply to a broker who takes possession of goods, or exercises control over them, and then transfers them to a buyer. See Lyons v. Premo Pharmaceutical Labs, Inc., 170 N.J.Super. 183, 196, 406 A.2d 185 (App. Div.), certif. denied, 82 N.J. 267, 412 A.2d 774 (1979). On the other hand, a broker who does not take possession of the goods and merely facilitates a sale between the buyer and the seller, may be considered not to be a "seller." See id. at 196-97, 406 A.2d 185; Laidlow v. Hariton Machinery Co., 335 N.J.Super. 330, 346-47, 762 A.2d 311 (App.Div.2000), rev'd on other grounds, 170 N.J. 602, 790 A.2d 884 (2002); Oscar Mayer Corp. v. Mincing Trading Corp., 744 F.Supp. 79 (D.N.J.1990); William A. Dreier et al., New Jersey Products Liability and Toxic Torts Law, comment b on § 12:1-4 (2006).
There is also a recognized exception for the "casual" or "occasional" seller of goods. This exception is discussed in the Restatement (Third) of Torts § 1 (1998). In the comments to this section, it is noted that the seller does not have to exclusively sell or distribute the product as long as the sale is not occasional or casual. Restatement (Third) of Torts § 1 comment c (1998). The exception applies to occasional sales outside the regular course of the seller's business. Ibid. For example, an occasional sale of a business's surplus equipment is not covered under this rule. Ibid.; see Dreier et al., supra, comment b on § 12:1-4; see also Donald M. Zupanec, Annotation, When Is Person Engaged In the Business For Purposes of Doctrine of Strict Tort Liability, 99 A.L.R.3d 671 (1980) (discussing when a sale is considered part of defendant's business and when a sale is considered merely occasional).
In light of the New Jersey cases in which this exception has been applied, we conclude that the term "occasional" does not mean "once in a while." It means that the selling of the goods at issue is not part of the "purpose" of the seller's business under N.J.S.A. 2A:58C-8. For example, in Santiago v. E.W. Bliss Div., supra, we declined to apply strict liability to a company that sold one of its punch presses after using the machine in its telephone equipment business for twenty-three years. We recognized that "the rule of strict liability does not apply to an occasional seller who is not engaged in that activity as a part of its business." Santiago, supra, 201 N.J.Super. at 216, 492 A.2d 1089 (emphasis added). The defendant in Santiago did not manufacture or sell punch presses as part of its business; it only used the punch press to make telephone equipment. Hence, although it happened to sell off one of its used punch presses, it was not a "seller" of punch presses for purposes of strict liability.
Similarly, in Allen v. Nicole, Inc., 172 N.J.Super. 442, 445-446, 412 A.2d 824 (Law Div.1980), defendant Jones, an amusement ride operator, purchased an amusement ride from the manufacturer and after two months of use, sold it to defendant Nicole, Inc., an operator of amusement rides. Id. at 444, 412 A.2d 824. In the regular course of Jones' business, *164 he had occasionally traded equipment with manufacturers and other ride operators. Ibid. But the court held that this activity did not make him a seller for purposes of strict liability:
In the case at bar defendant Jones, if he may be viewed as a seller, is even more a consumer of the equipment, for it is not the sale but the use of the equipment which constitutes his business. His disposal of less favored rides does not rise to the level of being a business of selling.
[Id. at 445, 412 A.2d 824.]
Guhr does not dispute that if he were in the business of selling used machinery, the Act would apply to him. His contention is that he is not, and never has been, in the business of such sales. He contends that his business was not "conducted for the purpose" of selling used equipment. N.J.S.A. 2A:58C-8. Rather he seeks to bring his activity within the exceptions for brokers or facilitators of sales, or for occasional sales.[4] While he may ultimately be entitled to the benefit of one or both exceptions, the murky and contradictory state of this record does not entitle him to summary judgment. See Ortiz, supra, 171 N.J.Super. at 116, 407 A.2d 1290 (on summary judgment motion, "meager record" did not permit court to conclude that defendant was not a seller of used machines).
Our independent review of the motion record leads us to conclude that there are material disputes of fact on the issue of whether selling machinery was part of Guhr's business, even if it was a minor aspect of his business. The parties presented conflicting evidence on the issue of whether Guhr had previously sold machines to Baker or whether he had merely located other sellers of machinery and placed Baker in contact with those sellers. At his deposition, Baker's president initially testified that Guhr helped his company to find sellers when Baker needed equipment; but in the same deposition he testified that his company "probably" bought all of its mixing machines from Guhr.
In light of the conflicting testimony on the critical issue of Guhr's sales activities, summary judgment should not have been granted. Brill v. Guardian Life Ins. Co. of Am., supra, 142 N.J. at 540, 666 A.2d 146. We appreciate that the record was confused and meager, but this should have resulted in denial of the motion. Ortiz, supra. Moreover, Guhr was in possession of virtually all of the relevant facts which plaintiff needed to prove his case, and his credibility was critical. This also militated in favor of requiring him to present his defenses at trial, where his credibility *165 could be assessed with the aid of cross-examination. See D'Amato by McPherson v. D'Amato, 305 N.J.Super. 109, 115-16, 701 A.2d 970 (App.Div.1997).
After reviewing the entire transcript of Guhr's deposition, we also agree with plaintiff's assertion that he should be permitted to re-depose Guhr. In his deposition, Guhr testified that he had sold machines not only to Baker but to other companies. However, in supplemental interrogatory answers and in a reply certification opposing the summary judgment motion, he denied having made any sales beyond the one to Baker and he attempted to portray himself as a mere facilitator of sales. The documents are particularly troubling, because they were provided to plaintiff's counsel on the day of the motion argument, and they presented a self-serving "spin" on Guhr's activities which was at variance with his deposition testimony.

III
Having determined that plaintiff is entitled to a trial on the issue of whether Guhr is a seller within the meaning of the Act, we turn to the issue of who should act as trier of fact on that narrow issue. In the area of strict liability, "[i]t is for the Court to determine whether a legal duty will be imposed." Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 398, 451 A.2d 179 (1982); Ortiz v. Farrell Co., supra, 171 N.J.Super. at 114, 407 A.2d 1290. Likewise, "[t]he trial court must determine whether the duty of strict liability exists." Suter v. San Angelo Foundry, 81 N.J. 150, 177, 406 A.2d 140 (1979). This principle was discussed at length in Suter:
[I]t is the function of the court to decide whether the manufacturer has the duty and obligation imposed by the strict liability principle. As in tort law generally, determination of existence of a duty depends upon a balancing of the nature of the risk, the public interest and the relationship of the parties.... The question is ultimately one of public policy, the answer being dependent upon a consideration of all relevant factors to decide what is fair and just. See Brody v. Overlook Hospital, 66 N.J. 448 [332 A.2d 596] (1975); Newmark v. Gimbel's Inc., 54 N.J. 585, 596-597 [258 A.2d 697] (1969); Caputzal v. Lindsay Co., 48 N.J. 69, 75 [222 A.2d 513] (1966). Dean Green has summarized the duty-risk approach in the following manner:
The determination of the issue of duty and whether it includes the particular risk imposed on the victim ultimately rests upon broad policies which underlie the law. These policies may be characterized generally as morality, the economic good of the group, practical administration of the law, justice as between the parties and other considerations relative to the environment out of which the case arose. They are found in all decisions whether based on former decisions of the court or on a fresh consideration of the factors found in the current environment. It need not be added that the scope or extent of duty in any case can only be resolved by the learning, experience, good sense and judgment of the judge  the molding of law in response to the needs of the environment. [Green, "Duties, Risks, Causation, Doctrines," 41 Tex. L.Rev. 42, 45 (1962)]
Applying the same principle to strict liability actions, Dean Green, referring to § 402A of the Restatement, has written:
It is the function of the trial judge, subject to appellate review, to determine whether in the particular case the law imposes liability on the seller for the violation of its duty to the *166 injured consumer. [Green, "Strict Liability Under Sections 402A and 402B: A Decade of Litigation," 54 Tex. L.Rev. 1185, 1200 (1976)]
[Id. at 172-73, 406 A.2d 140.]
See also Restatement (Third) of Torts § 1 comment c (1998) ("Whether a defendant is a commercial seller or distributor... is usually a question of law to be determined by the court.") We conclude that the principles enunciated in Suter, which was decided under the common law, are equally applicable to the Product Liability Act, N.J.S.A. 2A:58C-8, where there is a threshold issue as to whether the defendant is subject to the Act as a "product seller." See Becker v. Tessitore, supra, 356 N.J.Super. at 247-48, 812 A.2d 369 (looking to pre-Act cases in construing the Act). Resolving that issue requires a determination as to whether defendant has a duty that results in his being subject to principles of strict liability. Therefore, the issue is to be decided by the court rather than by a jury.
When the proofs presented on a summary judgment motion reveal that certain facts are undisputed, but some limited facts remain in dispute, R. 4:46-3(b) permits the trial judge to take testimony in order to resolve those discrete issues:
If after the inquiry prescribed by paragraph (a) of this rule [concerning disputed and undisputed facts] it appears to the court at the hearing of the motion that the case may be fully or partially adjudicated upon limited testimony, with or without specific further discovery, the court shall, if practicable, enter an order fixing a date certain for the trial of specifically identified disputed factual issues and, if appropriate, fixing the subject, mode, and time for completion of discovery.
[R. 4:46-3(b).]
This rule provides the appropriate vehicle for resolving the issue of Guhr's status under the Act. See Matter of Estate of Baker, 297 N.J.Super. 203, 207-08, 687 A.2d 1047 (App.Div.1997); Pacenti v. Hoffman-La Roche, Inc., 245 N.J.Super. 188, 193-94, 584 A.2d 843 (App.Div.1991). Following completion of Guhr's re-deposition and any other discovery that the trial judge may in his discretion permit, the judge should conduct a bench trial to resolve the threshold issue of whether Guhr is a "seller." Plaintiff's right to a jury trial on the remaining product liability and personal injury issues will depend on the outcome of the bench trial.
Reversed and remanded.
NOTES
[1] Based upon the materials presented to us on this appeal, including the depositions of Guhr and Steven Stewart, Baker's company president, it appears that a bench trial could be completed in less than a day.
[2] The order on appeal dismissed plaintiff's entire complaint, although the negligence issue was neither argued on the motion nor addressed in the trial judge's opinion. As plaintiff has not raised the issue on this appeal, it appears that the negligence issue has been abandoned.
[3] In their motion submissions, the parties filed only selected portions of the deposition transcripts. We note that although the entire deposition transcripts were not filed with the trial court, plaintiff has filed them with us in violation of R. 2:5-4(a), and has referred to them in his brief, albeit without objection from defendant. While we do not condone this impropriety, we have considered the transcripts as a proffer of what the parties' testimony would probably be at trial, and in connection with plaintiff's contention that further discovery is needed if this matter is remanded to the trial court. See Catton v. Ins. Underwriting Ass'n, 242 N.J.Super. 5, 7, 576 A.2d 1 (App.Div.1990). In reviewing the trial judge's decision of the summary judgment motion, we have only considered those materials that the parties filed with the judge.
[4] Guhr also invokes the line of cases holding that a business is not strictly liable as a seller for defects in a product that is part of its own equipment or a product that is incidental to the business. See e.g., Becker v. Tessitore, supra, (trucking company not strictly liable for defects in a re-treaded tire that fell off one of its trucks causing injury to plaintiff); Dixon v. Four Seasons Bowling Alley, Inc. 176 N.J.Super. 540, 546, 424 A.2d 428 (App.Div. 1980) (bowling alley not strictly liable for injuries caused by a defective bowling ball used by a customer); Ranalli v. Edro Motel Corp., 298 N.J.Super. 621, 624-25, 690 A.2d 137 (App.Div.1997) (motel not strictly liable for defect in frying pan supplied to a motel guest); Magrine v. Spector, 100 N.J.Super. 223, 241 A.2d 637 (App.Div.1968), aff'd, 53 N.J. 259, 250 A.2d 129 (1969) (dentist not strictly liable for defective needle used to treat patient). See N.J.S.A. 2A:58C-8 (term "product seller" does not include "[a] provider of professional services in any case in which the sale or use of a product is incidental to the transaction and the essence of the transaction is the furnishing of judgment.") On this record, it does not appear that this exception would apply to Guhr, because he did not use the mixing machine in the course of his business.