. 532 P.2d 185

**Alice B. RIX, a widow, Appellant,**

v.

**Billy Joe REEVES, doing business as Reeves Auto, and James Banks, Appellees.**

**No. 1 CA–CIV 2392.**

Court of Appeals of Arizona,
Division 1,
Department A.

March 4, 1975.

Rehearing Denied April 3, 1975.

Review Denied April 29, 1975.

Pain & Julian by Peter A. Guerrero and Fred J. Pain, Jr., Phoenix, for appellant.

Johnson, Tucker, Jessen & Dake, P.A. by Michael M. Johnson, Phoenix, for appellees.

## OPINION

DONOFRIO, Acting Presiding Judge.

This is an appeal from the Superior Court of Maricopa County where the defendant, Billy Joe Reeves, was granted a motion for a directed verdict on the question of his liability for injuries received by the appellant, Alice B. Rix, when she was struck by a ring which "exploded off" of a lock ring wheel which Reeves, a used automobile parts dealer, had sold to Mrs. Rix's friend, James Banks, for use on his pickup truck.

We are called upon to determine whether there was sufficient evidence presented in the trial court which would have supported a recovery by the appellant, Mrs. Rix, against appellee Billy Joe Reeves by reason of his being liable under the theory of products liability, or the law of negligence. For the reasons enunciated hereafter, we affirm the decision granting appellee Reeves' motion for a directed verdict.

From the facts in the case it appears that Mrs. Rix, a sixty-six year old widow, and her friend, James Banks, planned a camping trip to Roosevelt Lake. In preparation for the trip, on March 13, 1971 the two of them drove Banks' pickup truck to Reeves' place of business to purchase a used wheel for Banks' truck. Banks and Mrs. Rix were aware that Reeves' business was selling used automobile parts which he obtained by taking them off wrecked vehicles which he has purchased. Banks was shown several wheels, and he subsequently purchased the one in question for $10.00. The wheel is the type which holds the tire in place with a lock ring or rim. The facts indicate that Banks was familiar with this type of wheel, and in fact already had two of them on his truck. It is undisputed that Reeves also was familiar with this type wheel as he had been in the trucking business for 20 years. The wheel Banks purchased already had a worn rubber tire on it. The wheel (and tire) were taken to the truck owned by Banks and placed in ,the back portion which contained a camper attached to the body of the truck. Testi-

mony indicated the wheel was only visually inspected by the parties and not disassembled by Reeves, apparently because Reeves did not have the equipment to remove the rubber tire from the wheel. No warning as to possible dangers from this type wheel was given by Reeves to Banks or Mrs. Rix. Apparently it was understood by the parties that the wheel was not going to be used until the old rubber tire had been replaced by a new tire. Subsequently Banks inflated the worn tire while it still remained in the back of the truck while on the way to Roosevelt Lake on the morning of March 15, 1971. That night at Roosevelt Lake the tire was taken from the truck by Banks and placed on the ground nearby.

The next morning, Tuesday, March 16, 1971, Mrs. Rix was kneeling in the back of the pickup folding blankets, and facing outside. Suddenly the lock ring "exploded" from the wheel and struck her in the mouth, thereby causing her injuries.

Appellant appears to urge that there was sufficient evidence introduced to allow the case to go to the jury on the theory of strict tort liability under Restatement 2d of Torts, Section 402A (1965). Restatement 402A states in part as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his· property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

■ It is well established that the Arizona courts have adopted the rule of strict liability as set forth in the foregoing Restatement. O. S. Stapley Co. v. Miller, 103 Ariz. 556, 447 P.2d 248 (1968); Maas v. Dreher, 10 Ariz.App. 520, 460 P.2d 191 (1969), and cases noted therein. However, to our knowledge, no Arizona Appellate Court has applied that theory to a situa-

tion where the seller engaged in selling *used* products. By used products we do not refer to products rebuilt by a manufacturer, nor do we mean to imply that there is never any liability when used products are sold. We find no justification here for extending the strict liability in tort theory to the operator of an auto salvage yard when a tire rim of unknown age and use fails. The obvious ramifications of such a decision would extend beyond the dealers in used automobile parts to all sellers of used products in our state. Due to the nature of this type business (selling used, worn and sometimes obviously damaged products), it would seem to be a severe economic blow to force these dealers to inspect and repair parts before sale, warn of obvious dangers in using used parts, and to insure against possible liability for injuries caused from their use.

Appellant cites the case of Witt Ice and Gas Co. v. Bedway, 72 Ariz. 152, 231 P.2d 952 (1951), for the proposition that strict tort liability should be applied to sellers of defective used products. We think that case is distinguishable from the case at bar by the fact that in the Witt case the seller of the used regulator had led the purchaser to believe that it was in fact new and that he, the seller, was guilty of actionable negligence by failing to examine it or to advise the buyer that it was a used regulator and that it might be in a dangerous condition.

Further, in the Witt case the court found that the seller was guilty of negligence due to the fact that he knew the used regulator was imminently dangerous to life or limb of another, and that an injury to another could have been reasonably anticipated by the seller. In the instant case we do not find that the used rim was imminently dangerous, due to the infrequency with which such rims failed, nor could the injury to Mrs. Rix be reasonably anticipated by the seller, Reeves. Also, the purchaser, Banks, and the appellant, Mrs. Rix, knew that this was a seller of *used*

parts and that they were buying a *used* rim. A reasonable buyer would not expect to pay a new rim price under such circumstances, and could not expect the quality and warranties available in the purchase of a new rim.

We must agree with appellee Reeves that even if we apply the strict tort liability theory to this dealer in salvaged parts, appellant's case would still fall for lack of proof that this wheel was "defective" as required by Restatement 402A. It is unfortunate that this accident happened, but when a product fails it does not automatically raise a presumption of a legal defect. Kerr v. Corning Glassworks, 284 Minn. 115, 169 N.W.2d 587 (1969). In our case we must test whether this used wheel was "unmerchantable" as in A.R.S. § 44–2331 (Arizona numbering of UCC § 2–314), and whether it was "unreasonably dangerous" as in Restatement 402A. The result is that we compare this wheel with other salvaged tires of unknown use and age, and we test whether this wheel met the reasonable expectations of a reasonable buyer of used auto parts. The fact that this tire could have been *defective* or *broken,* or *worn out,* would require more proof of its defective condition than was offered by appellant.

Appellant also asserts that appellee Reeves was negligent in failing to inspect the wheel before sale, and in failing to give a warning to the purchaser of its possible dangers. The record indicates that the purchaser of this wheel knew he was buying a used rim, knew their operational characteristics (he already had two on his truck), knew that the rims sometimes come apart, and knew that he was expected (by Reeves) to take the wheel and tire to a qualified service man to have a new rubber tire applied to the used rim before using it. We think that this purchaser was aware of the dangers involved in using this type of rim and no duty to warn was owed by the seller, Reeves. We find it significant that the parties understood that this rim was to

**246**

undergo further observation, if not inspection, by a qualified service man before use.

The failure to make an internal inspection of this rim did not amount to a violation of a duty to the purchaser. The purchaser, Banks, knew he was buying a *used* rim and was familiar with them; he indicated that he had a new rubber tire that would be put on the wheel in place of the worn tire; and Banks knew Reeves did not have the proper equipment to remove the worn tire. In fact, the reason the worn rubber tire was left on the wheel (it was not included in the purchase price) was due to Reeves' lack of the proper tire changing equipment. These facts concerning the purchasing of the whole wheel in an "as is" condition, coupled with the fact that Reeves is a dealer in salvaged auto parts, leads us to the conclusion that no duty to internally inspect the rim was owed by Reeves to the purchaser. There was no reason to expect that this rim would fail as it did, injuring Mrs. Rix, and Reeves' failure to inspect it did not constitute negligence. Perhaps it would be a different case if Reeves had led the purchaser, Banks, to believe that he had improved the condition of the rim before sale. But in this case Banks knew essentially what he was purchasing.

We note the case of Holley v. Central Auto Parts, 347 S.W.2d 341 (Tex.Civ.App. 1961), in which a seller of a used rim was found not negligent in failing to inspect and test the rim before sale, and his motion for a directed verdict was granted and affirmed. The injury to the plaintiff had resulted when the used rim later collapsed.

Finally, the appellant makes reference to liability based on *res ipsa loquitur* and breach of warranty, but makes no argument for these theories in her brief nor cites any authority therefor. We will not examine them as we believe the previous discussion disposes of the appeal.

Affirmed.

STEVENS, and FROEB, JJ., concur.