660 P.2d 1236

**J.B. JORDAN and Cathy Jordan, his wife, Plaintiffs-Appellants,**

v.

**SUNNYSLOPE APPLIANCE PROPANE & PLUMBING SUPPLIES COMPANY and Canyon Gas & Appliance Company, Defendants-Appellees.**

1 CA–CIV 5554.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 6, 1983.

As Amended Jan. 12, 1983.

Rehearing Denied Feb. 18, 1983.

Review Denied Mar. 22, 1983.

Lewis & Roca by D.W. Grainger, Paul G. Ulrich, Beth J. Schermer, Phoenix, for appellants.

Robbins & Green, P.A. by Michael J. O'Grady, William H. Sandweg III, Phoenix, for Canyon Gas & Appliance Co.

Hughes & Hughes by Coit I. Hughes, Phoenix, for Sunnyslope Appliance Propane & Plumbing Supplies Co.

OPINION

MEYERSON, Judge.

The sole issue on this appeal from summary judgment is whether the trial court correctly held that dealers [1] in used products cannot be held strictly liable for harm resulting from defective goods which may be unreasonably dangerous. We hold that a dealer in used goods may be held strictly liable under the Restatement (Second) of Torts § 402A (1965) (hereinafter cited as § 402A) as adopted by our supreme court.

---

1. "Seller" and "dealer" are used interchangeably. "Seller" is used within the meaning of § 402A.

## I. FACTS

In December, 1975, the father of plaintiff J.B. Jordan purchased a used propane storage tank from Canyon Gas and Appliance Co. (Canyon Gas), a dealer in new and used propane tanks. The tank had been manufactured by American Pipe and Steel Co. (American Pipe) in 1947. The tank was sold without guarantees or representations regarding its condition. Jordan's father inspected the tank before buying it, removed the tank from Canyon Gas's premises and had it installed at his rental property located adjacent to his son's home. The tank was filled regularly and used for a year and a half after its purchase without incident.

On August 17, 1977, the tank was serviced by Sunnyslope Appliance Propane and Plumbing Supplies Co. (Sunnyslope). While the tank was being filled with liquid propane, the hose used in filling the tank disconnected. The propane exploded, totally destroying the plaintiff's house next door.

Plaintiffs filed a complaint alleging strict liability in tort against American Pipe and Canyon Gas. Plaintiffs alleged that the shut-off valve in the tank malfunctioned by failing to close, thereby allowing the propane to escape from the tank when the hose disconnected. They alleged that the valve was defective in design, material, construction or workmanship. Plaintiffs also sued Sunnyslope for negligently filling the tank and allowing the propane to escape.

American Pipe sought summary judgment on the grounds that it had not manufactured the valve and because there was no evidence that the valve had been installed on the tank when it left the manufacturer. The trial court granted American Pipe's motion for summary judgment and dismissed American Pipe as a defendant. No appeal was taken from that judgment.

Sometime thereafter Canyon Gas moved for summary judgment, arguing that the doctrine of strict liability in tort did not extend to a seller of used goods. The trial court granted the motion and dismissed Canyon Gas from the case. Plaintiffs have appealed from the granting of Canyon Gas's motion for summary judgment.

## II. CONTENTIONS OF THE PARTIES

The dispute between the parties centers on the scope and extent of protection we are to afford those injured by unreasonably dangerous and defective products. The parties offer differing interpretations of § 402A, which provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

In arguing that strict liability should be imposed on dealers in used goods, plaintiffs urge that § 402A and the comments thereto can be read to show the drafters meant to include used goods or at least did not mean to exclude them from the section. Section 402A states that one who sells "any" product is liable, not one who sells "any new" product. Comment (f) specifies there is an exception for one who is an "occasional" seller, not engaged in the business of selling the particular kind of product. It does not state that an exception applies to those in the business of selling particular used goods.

Plaintiff urges that the requirement that the product be "unreasonably dangerous" allows the trier of fact to inquire into the age and condition of the product and the knowledge of the buyer, and serves to limit liability to those cases where injury was caused by a defect below the degree of safety which the ordinary purchaser of a used product could reasonably expect. Plaintiff points out that strict liability is a cost spreading device to shift the cost of injuries from the injured party to those responsible for placing the product on the market and who are more aware and better able to control the actual risks involved.

Plaintiff contends that the seller is able to adjust the cost of products he sells to include the cost of liability, insure against losses, and choose whether to place any particular product on the market at all. Plaintiff urges that a seller of used goods, just like a seller of new goods, is able to distribute the cost of doing business among his customers or shift liability to others in the chain of production.

In urging this court not to impose the doctrine of strict liability on used good dealers, Canyon Gas stresses the differences between dealers in used and new goods. It argues that the dealer in used products is not an integral part of the producing and marketing chain, having had no part in placing the product into the hands of consumers in the first instance. Because he has no continuing relationship with the manufacturer, Canyon Gas argues that a dealer in used products cannot exert pressure on the manufacturer nor adjust the cost of liability imposed upon him during the course of such relationship. Furthermore, according to Canyon Gas, the dealer in used goods cannot obtain indemnity because the product has changed hands since leaving the manufacturer. Finally, Canyon Gas argues that the cost of insurance would be prohibitive and trying to pass liability and insurance costs on to customers would drive used good dealers out of the market.

## III. DECISIONS FROM OTHER JURISDICTIONS

Most of the arguments proffered by the parties have been discussed at length by those courts which have faced this issue to date. The question of whether or in what circumstances a dealer in used products should be held strictly liable for a defect attributable to the initial design or manufacturing of the used product has produced a split in authority. Annot., 53 A.L.R.3d 337 (1973).

In *Hovenden v. Tenbush,* 529 S.W.2d 302 (Tex.Ct.App.1975), a plaintiff sought to impose strict liability upon a dealer in used brick. Relying on its understanding of the language in § 402A and the policy behind it as set forth in the official comments, the court held that a seller of used products is not insulated from liability. The court observed that nothing in § 402A or its comments suggested that the rule was not meant to apply to sellers of used goods:

We find nothing in Sec. 402A, or in the accompanying comments, which suggests that the rule there announced is not applicable to dealers in used products. The liability is imposed on the seller of "any product." Neither the rule nor the commentary contains any language which can fairly be interpreted as making the rule applicable only to sellers of new products.

529 S.W.2d at 306.

The court concluded that because enterprise liability is the basis for the rule, dealers in used goods should be treated the same for strict liability purposes as dealers in new goods. According to the court, both obtain profit from selling the product and often are able to distribute the cost and shift liability. The court observed that "Sec. 402A imposed liability on sellers of used products where the evidence showed that the injury resulted from an inherent defect in the product, rather than from a condition brought about by normal use of the chattel." 529 S.W.2d at 309.

In *Turner v. International Harvester Company,* 133 N.J.Super. 277, 336 A.2d 62 (1975) a New Jersey court held that § 402A applied to dealers in used goods; the plaintiff was fatally injured when a truck collapsed on him. The court found enterprise liability to be the justification for the products liability doctrine and found that the same considerations for holding sellers of new goods strictly liable applied to dealers in used goods:

An economic analysis of enterprise liability, which includes direct as well as indirect costs, would charge those in the business of selling a defective product with responsibility for all harms, physical and economic, which result from its use. To a considerable extent—with respect to *new* goods—the manufacturer bases the cost of his product on his expenses, which

include damages caused by the product and insurance to cover those damages. This cost is spread among all the customers for that product; it reflects the justifiable expectations of customers regarding safety, quality and durability of new goods. Sellers of used goods may similarly distribute their costs of doing business which, in turn, will reflect what is considered by the public to be justifiable expectations regarding safety, quality and durability of used goods.

*Id.* at 288–89, 336 A.2d at 69 (citations omitted).

The *Turner* court rejected the notion that the public did not expect used products to be safe from manufacturing and design defects when purchasing a serviceable product as opposed to junk parts. The court observed that while buyers of used products could not expect the same quality and durability as would be found in a new product, their expectations of *safety* were not generally lessened simply because the product is used:

> [R]ealistic expectations of quality and durability will be lower for used goods, commensurate with their age, appearance and price. However, safety of the general public demands that when a used motor vehicle, for example, is sold for use *as a serviceable motor vehicle* (and not as junk parts), absent special circumstances, the seller be responsible for safety defects whether known or unknown at time of sale, present while the machine was under his control. Otherwise, the buyer and the general public are bearing the enterprise liability stemming from introduction of the dangerously defective used vehicle onto the public highways. Public policy demands that the buyer receive a used chattel safe for the purpose intended (where no substantial change will occur prior to reaching the buyer or foreseeable consumer).

*Id.* at 289, 336 A.2d at 69.

Finally, the *Turner* court observed that the requirement that the defect in the product be "unreasonably dangerous" permits the court or jury to inquire into the nature of the product, its age and condition, creating a standard against which the defect can be measured. The unreasonably dangerous standard also allows an inquiry into the particular relationship of the parties or the degree of sophistication of the purchaser which might show that the product did not present an unreasonable danger in the particular situation. As the court said:

> It is only when there is unreasonable danger ... in the defective product that recovery can be founded on the rule of strict liability in tort, and this should be especially so when dealing with used goods. Only by this word 'unreasonable' is the court or jury permitted an inquiry into the nature of the product, its age and condition, and thus able to set a standard against which the defect can be measured.
>
> . . . .
>
> Use of the 'unreasonably dangerous' standard, whether viewed from the general statement of the rule or the definition of a dangerous condition, permits a court to look both at the sophistication of the injured purchaser and the reasonable expectations of the seller to determine whether the strict liability rule should be applied.

*Id.* at 291–92, 336 A.2d at 70–71. As explained in Section IV, *infra,* we agree with the reasoning of the court in *Turner* and find strict liability equally applicable to damage caused to property as well as personal injury. *See Rocky Mountain Fire and Casualty Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 640 P.2d 851 (1982).

One of the first courts to conclude that sellers of used goods should not be strictly liable for defects created by the manufacturer was the Oregon court in *Tillman v. Vance Equipment Co.,* 286 Or. 747, 596 P.2d 1299 (1979). The plaintiff sought to impose strict liability on the seller for injuries from a defect in a used crane. The court noted that "*if a jurisdiction has adopted the principle of strict liability on the basis of enterprise liability, the liability of the seller of either a new or used product would logically follow.*" *Id.* at 753, 596 P.2d at 1302

(emphasis added). The court noted, however, that it had never been willing to rely on enterprise liability alone as a justification for strict liability for defective products. Along with enterprise liability, the Oregon court identified three other justifications for the doctrine—implied representation of safety made by the seller to the consumer, risk reduction and compensation.

The court first considered whether an inference can be made that a dealer makes any representation with regard to safety when selling a used product. The court decided that a buyer of used goods does not expect the same quality as a buyer of new goods:

> Those markets, generally speaking, operate on the apparent understanding that the seller, even though he is in the business of selling such goods, makes no particular representation about their quality simply by offering them for sale. If a buyer wants some assurance of quality, he typically either bargains for it in the specific transaction or seeks out a dealer who routinely offers it. . . .

*Id.* at 755, 596 P.2d at 1303. The court then concluded that the sale of a used product, without more, does not generate the kind of expectations of safety which are created when the product is first put on the market. *Id.* at 755–56, 596 P.2d at 1304. In our view, this reasoning misses the mark because we have found no empirical evidence to warrant the conclusion that the purchaser of a used product from a commercial dealer engaged in the business of selling that product, necessarily expects the product to contain *unreasonably dangerous* defects. Furthermore, this contention ignores the plight of the innocent bystander, such as the plaintiffs herein, who may suffer loss or injury without ever having purchased the product themselves.[2]

The Oregon court also noted that the risk-reduction aspect of strict liability would not be served where a used product was sold. The court observed that a dealer in used products is normally outside the original chain of distribution of the product. It saw no ready channel of communication by which the dealer and the manufacturer may exchange information about possible or actual dangerous defects with a view to eliminating the defects.

Admittedly, the relationship between a dealer in used products and the manufacturer is more attenuated than the relationship between the dealer in new products and the manufacturer. But we reject the view that the seller of used goods is outside the chain of distribution. He offers the goods for sale and profits therefrom. Thus, he is an integral part of the marketing system. At any rate, imposing strict liability on the commercial dealer of used products should result in increased maintenance and inspection of such products before they are offered for sale. *See Escola v. Coca Cola Bottling Co.,* 24 Cal.2d 453, 462, 150 P.2d 436, 440–41 (1944).

In *Tauber-Arons Auctioneers Co. v. Superior Court,* 101 Cal.App.3d 268, 161 Cal. Rptr. 789 (1980) the plaintiff sought to impose strict liability on an auctioneer for a defective product sold in an auction. The court concluded that the connection between the auctioneer and the product sold in the auction was "random and accidental," and therefore the auctioneer should not be held strictly liable. The court went on to embrace the Oregon rule from *Tillman* limiting liability of secondhand dealers with respect to defects created by the original manufacturer. The California court approved the conclusion that the representation of safety in new products is greater than in used products. The court was also persuaded that because the dealer in used goods is usually outside the original marketing chain, he cannot play a role in risk reduction and cannot adjust the cost with the manufacturer as easily. The court

---

2. We do not imply that we "have moved out of the area of tort law and into a compensation system based upon injury." *Brady v. Melody Homes Mfg.,* 121 Ariz. 253, 259, 589 P.2d 896, 902 (1979). We simply point out that Oregon's implied representation of safety theory fails to consider the interests of third parties who may be injured by the sale of unreasonably dangerous products.

agreed with Oregon's conclusion that strict liability should not be imposed on dealers in used goods absent some representation of quality beyond the sale itself or other special circumstances.

In *La Rosa v. Superior Court,* 122 Cal. App.3d 741, 176 Cal.Rptr. 224 (1981) the court reaffirmed the position it took in *Tauber-Arons.* *Importantly, the court indicated that it believed that if § 402A were wholly embraced in California, strict liability should be imposed on dealers in used goods.* The court went on to point out that California courts have not deemed themselves to be invariably bound by § 402A. It cited the decision in *Cronin v. J.B.E. Olson Corp.,* 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972), in which the court rejected the "unreasonably dangerous" element of § 402A. The court considered various policy considerations similar to those discussed in *Tillman* and *Tauber-Arons* and concluded that strict liability should not be imposed on dealers in used goods.

## IV. ARIZONA CASES

Arizona courts have touched on the question of whether strict liability is to be imposed on dealers in used goods in only one case. In *Rix v. Reeves,* 23 Ariz.App. 243, 532 P.2d 185 (1975) this court was asked to impose strict liability on an auto salvage yard operator from whom the plaintiff had obtained a used wheel which later caused injury. Although this court found no strict liability in that particular case, we do not find *Rix* controlling on whether Arizona should impose strict liability on dealers in used goods as a general rule. We limited the holding in *Rix* to the particular facts of that case. We found "no justification ... for extending the strict liability in tort theory to the operator of an auto salvage yard where a tire rim of unknown age and use fails." *Id.* at 245, 532 P.2d at 187.[3] In *Rix* we observed that it would be a severe economic blow to force dealers in junk parts—parts which are often obviously worn and damaged—to inspect and repair the parts,

warn against dangers, and insure against possible liability. We pointed out, though, that "[b]y used products we do not refer to products rebuilt by a manufacturer, nor do we mean to imply that there is never any liability when used products are sold."

Because the Arizona Supreme Court has embraced the rule of strict liability as expressed in § 402A, we conclude that a dealer engaged in the business of selling used goods of the type in question may be held strictly liable under the terms of the Restatement rule. We note that whereas California has held that a plaintiff need not prove that a defect in a product made the product unreasonably dangerous, thus making sellers absolute insurers against defects causing injury, our supreme court has rejected that position. *Byrns v. Riddell, Inc.,* 113 Ariz. 264, 550 P.2d 1065 (1976). Because California courts have removed the unreasonably dangerous element in strict liability cases, they have a proper concern that dealers in used goods should not be made insurers of their products like dealers in new goods. We need not have this concern because the unreasonably dangerous standard is intact in Arizona. It is the plaintiff's burden in Arizona, in a strict liability case, to prove that the product is unreasonably dangerous; thus, the nature of the good—whether it is new or used—becomes relevant. As the *Turner* court found, the unreasonably dangerous standard which allows inquiry into matters such as age and condition of a used product, specific representations made, and sophistication of the buyer, provides sufficient protection to the dealer in used goods. *Rix v. Reeves,* 23 Ariz.App. at 245–46, 532 P.2d at 187–88; *see Brady v. Melody Homes Mfg.,* 121 Ariz. at 257, 589 P.2d at 900 (unreasonably dangerous means " 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.' ") (quoting from § 402A comment (i)).

---

**3.** In addition to salvage yard sales, strict liability should not extend to "random and acciden-

tal" sales such as garage sales or swap meets. § 402A comment (f).

In *Tucson Industries, Inc. v. Schwartz,* 108 Ariz. 464, 501 P.2d 936 (1972), the Arizona Supreme Court addressed the policy considerations behind the doctrine of strict liability for product defects. The court approved language from *Caruth v. Mariani,* 11 Ariz.App. 188, 463 P.2d 83 (1970):

> Strict tort liability is based on public policy.... Who should bear the loss? The injured member of the public or those persons who are in the chain of placing defective goods on the market? We choose to protect the member of the public since those involved in the chain of marketing can distribute the risk between themselves by means of insurance and indemnity agreements....

108 Ariz. at 467, 501 P.2d at 939. The court held the rationale underlying strict liability to be as follows:

> Strict liability is a public policy device to spread the risk from one to whom a defective product may be a catastrophe, to those who marketed the product, profit from its sale, and have the know-how to remove its defects before placing it in the chain of distribution.

*Id.* at 467–68, 501 P.2d at 939–40. Thus, the basis for strict liability in Arizona is the enterprise liability theory. We find nothing in § 402A or in prior Arizona cases which requires the seller to be in the "initial" chain. It is enough that he is anywhere in the chain of supplying goods to the public, that he is in the business of supplying the goods and that the item reaches the consumer without substantial change in its condition. There is no justification for finding that used good dealers as a class cannot shift losses, distribute costs, or insure against losses.[4]

Canyon Gas cites one additional reason to withhold imposition of strict liability on sellers of used goods—that the dealer will not be able to obtain indemnity from the manufacturer if there has been a substantial change in the product since it left the manufacturer. This is true, however, whether the product is new or used. A.R.S. § 12–683(2). Admittedly, the longer the product is in the marketplace, the greater the likelihood that it will be altered or modified. We reject the notion that in all cases it will be impossible for the seller of used goods to seek indemnification from the manufacturer. Indeed, Arizona law authorizes a seller to seek indemnity from a manufacturer without any limitation on whether the product is new or used. A.R.S. §§ 12–681–86. In addition, no product liability action may be filed more than twelve years after the product was first sold. A.R.S. § 12–551.[5]

Accordingly, we reverse the summary judgment in favor of Canyon Gas and return the matter to the trial court for the parties to litigate the factual questions which they may show to exist.

GRANT, J., concurs.

EUBANK, Judge, specially concurring:

I concur in the result.

The question of extending § 402A liability to sellers of used products is a growth area in the law. Having adopted § 402A by means of judicial legislation, we are now forced to consider reasonable limits to liability. *See* Annot., Strict Liability in Tort, Liability of Seller of Used Products, 53 A.L.R.3d 337 (1973). The problem of limits centers around the large industry involved in selling used products: used cars, used plant and shop machinery, farm machinery, secondhand stores, park and swap, want ads, yard sales, etc. (§ 402A exempts occasional sales). Thus, public policy issues directly affecting the economy are involved. These issues are discussed in the cases cited in the above annotation and in this opinion. Another example is *Peterson v. Lou Bachrodt Chevrolet Co.,* 61 Ill.2d 17, 329 N.E.2d 785 (1975) where the Illinois Supreme Court held that strict liability does

---

4. The ability of small businesses to obtain product liability insurance has been greatly enhanced through the recent enactment of the Product Liability Risk Retention Act of 1981. 15 U.S.C. §§ 3901–3904.

5. This statute was not raised as a defense in this case because it was enacted subsequent to the date of the injury.

not extend to the seller of used cars. *See* Annot., 78 A.L.R.2d 460, 484 (1961).

This concern for limits was involved in our opinion in *Rix v. Reeves,* 23 Ariz.App. 243, 532 P.2d 185 (1975). There we excluded a seller of used truck parts (tire rim) from § 402A liability. It is good law even though the language is broad.

The opinion here is also overbroad in its language. I would limit the opinion to extending § 402A liability to the seller of new and used propane tanks. Further, I agree with the Oregon court in *Tillman v. Vance Equipment Co., supra,* that purchasers of used products expect less safety than they expect when purchasing a new product.

Finally, our legislature in adopting § 402A by enacting A.R.S. § 12–682, has enacted a two-year statute of limitations. A.R.S. § 12–551. The only exception to the statute is that "no product liability action may be commenced and prosecuted if the cause of action accrues more than twelve years after the product was first sold for use or consumption unless the cause of action is based upon the negligence of the manufacturer or seller or a breach of an express warranty provided by the manufacturer or seller." This statute has not been tested in our appellate courts. It is certainly an attempt on the part of the legislature to enact limits on § 402A liability.