**David KING, Plaintiff,**

v.

**DAMIRON CORPORATION, Paccar, Inc. and North American Rockwell International, Defendants.**

**No. 1:95CV264.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 19, 1996.

Edward L. Murphy, Jr., Miller Carson Boxberger and Murphy, Fort Wayne, IN, Humbert J. Polito, Jr., Faulkner and Boyce, New London, CT, for David King.

Daniel K. Leininger, Thomas R. Lemon, R. Steven Hearn, Lemon Armey Hearn & Leininger, Warsaw, IN, for Damiron Corp.

### *MEMORANDUM OF DECISION AND ORDER*

WILLIAM C. LEE, Chief Judge.

This matter is before the Court on a motion for partial summary judgment filed by the plaintiff David King on April 29, 1996. Also before the Court is a motion for summary judgment filed by defendant Damiron Corporation[1] on April 30, 1996. Plaintiff

---

**1.** Although the caption contains three defendants, defendants Paccar and Rockwell International Corporation were dismissed by Order of this Court on June 3, 1996 pursuant to the stipulation of the parties. (Rec. 69). Accordingly, the label "defendant" will refer to defendant Damiron Corporation.

responded to defendant's motion for summary judgment on May 24, 1996 to which defendant replied on June 3, 1996. For the following reasons, the motion for partial summary judgment filed by plaintiff will be denied while the motion for summary judgment filed by defendant will be granted.

### Factual Background

For present purposes, the relevant facts need only be recited briefly and are as follows. This diversity action was filed as a result of an accident which occurred on September 22, 1993, on Route 12 in Plainfield, Connecticut. On that date at that place, a rear left tandem axle detached from a truck, came across the highway, and struck the vehicle of the plaintiff. Plaintiff suffered injuries as a result of the accident.

The truck at issue was a 1985 Kenworth tractor which had been purchased from an individual by Damiron, a family owned business which offers for sale used semi-tractors. At the time Damiron purchased the vehicle on August 26, 1993, Damiron inspected the truck and took it for a test drive. It found the truck to be in satisfactory condition even though the odometer had exceeded its mechanical limits.

Four days later, Damiron entered into an agreement with Albert and Madelyn Morgan to sell the truck in an "as is" condition. Prior to executing the agreement, Albert Morgan crawled under the truck, visually inspected it, and took it for a test drive.[2] As a result of Morgan's review, Damiron agreed to change the drag link end toward the front hood of the truck; fix a tail light; and repair two marker lights.[3] Those repairs were completed on August 31, 1993. Madelyn Morgan picked up the truck on September 19, 1993. The accident which would serve as the basis for this lawsuit occurred three days later.

The accident resulted from a problem with the rear wheel locking assembly on the Kenworth. Plaintiff's expert opines that the rear axle came off as a result of there being two

washers between the inner wheel bearing lock nut and outer wheel bearing lock nut rather than one as originally designed by the manufacturer. Defendant's expert opines that the reason for the axle coming loose was that someone failed to properly install a locking washer by not bending over the tab on that washer so as to allow it to perform its locking function. There is nothing before this Court that would suggest that the failed parts would have been noticeable on visual inspection. Nor is there any evidence which would suggest that defendant did anything to the rear wheel locking system.

### Application of Law

Plaintiff's complaint against the defendant asserts causes of action sounding in strict products liability, breach of warranty and negligence.[4] The parties have filed cross-motions for summary judgment on the products liability claim while defendant has moved for summary judgment on all claims. These claims and arguments relating thereto will be considered in turn under separate headings after a review of the standards governing motions for summary judgment.

### A. *Summary Judgment Standards*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477

---

**2.** Albert Morgan had previously purchased used semi-tractors.

**3.** Albert Morgan would later testify that while the truck may have been defective at the time of purchase, he did not believe that Damiron was aware of any such defect.

**4.** Pursuant to this Court's Order entered January 31, 1996, Connecticut law governs plaintiff's substantive claims. (Rec. 43).

U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether there are genuine issues of material fact, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends there is no genuine issue. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record all material facts to which the non-movant contends there are exists a genuine issue necessary to be litigated. *See Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

### B. *Strict Liability*

Plaintiff's motion for partial summary judgment and part of defendant's motion for summary judgment address the issue of whether Connecticut recognizes a cause of action in strict products liability against a seller of used goods. Plaintiff is of the view that it does and cites two Connecticut Supreme Court decisions for that proposition. Defendant is of the view that that question has not been resolved in Connecticut and that therefore this Court should look else-

where for guidance and decide that such a claim would not be recognized in Connecticut. This Court is of the view that the issue of whether a seller of used goods can be held strictly liable under Connecticut is an open question.

In *Rossignol v. Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 227 A.2d 418 (1967), the Connecticut Supreme Court applied the theory of strict tort liability as found in § 402 of the *Restatement (Second) of Torts*. In doing so, the court wrote:

> Several conditions precedent to a seller's liability are noted in § 402A of the *Restatement (Second) Torts*, and a plaintiff must at least allege and prove facts bringing himself under the requirements of the section. These include not only allegations that the defendant sold the product, that it was in a defective condition unreasonably dangerous to the user, consumer or to his property, that it caused physical harm to the consumer or user or his property ... and that the seller was engaged in the business of selling such a product but also that the product was expected to and did reach the user or consumer without substantial change in the condition in which it was sold.... *This latter essential allegation may well be of great significance in circumstances as those which gave rise to the instant case where the product passed through several hands and eventually came into the possession of the plaintiff as part of a used, secondhand machine.*

227 A.2d at 424. (emphasis added). The foregoing underscored language in plaintiff's view suggests the Connecticut Supreme Court has applied strict liability to sellers of used goods. That is too broad a reading of *Rossignol.*

At issue in *Rossignol* was the sale of a used airplane. There, defendant Eden Manufacturing sold an exhaust valve to defendant Avco Corporation who in turn incorporated the valve in a motor which was then sold to defendant Piper Aircraft who incorporated the motor into an airplane which it sold to the defendant Danbury School of Aeronautics. Danbury in turn sold the airplane to a customer who later sold it back to Danbury which then sold it to plaintiff. After the aircraft was damaged in a crash landing due to engine failure, plaintiff sued all of the above parties save for the first purchaser from Danbury School. Tellingly, "the [Danbury S]chool answered on the merits and [was] not involved in th[e] appeal." *Id.* at 420. Nor was the second seller of used goods (the Danbury School's first purchaser) involved in the appeal since he or she had not even been named a party. Rather, with respect to the 402A claim, the issue was whether the allegations in plaintiff's complaint were sufficient to sustain a demurrer as to defendants Avco and Eaton. Thus, the potential liability of the secondhand sellers of the airplane was not at issue before the Connecticut Supreme Court.

Similarly, plaintiff's reliance on *Nichols v. Coppola Motors, Inc.*, 178 Conn. 335, 422 A.2d 260 (1979) for the proposition that the Connecticut Supreme Court has held that 402A applies to the seller of used goods is misplaced. In that case, plaintiff-decedent purchased a used Pontiac Tempest from defendant Coppola Motors. Two days later, he returned to Coppola with numerous complaints but was told to keep the car over the Labor Day weekend and return with it later. That advice proved fatal because on the Sunday before Labor Day, the brakes failed and the Tempest crashed into a utility pole killing one and injuring three others. Consolidated cases were filed alleging breach of express and implied warranties and strict tort liability. General verdicts were returned in favor of plaintiffs and defendants appealed challenging the charges to the jury and the trial court's refusal to set aside the verdicts as excessive. The question of the propriety of maintaining an action in strict liability against the seller of a used vehicle was not an issue on appeal and consequently was not addressed by the Connecticut Supreme Court. Given that general verdicts were returned, it can not be said with any certainty that the verdicts were based on plaintiffs' 402A claim.

Clearly, neither of the foregoing cases addresses precisely the issue of whether a strict products liability action may be maintained against a seller of used goods under Connecticut law and this Court has been unable to locate any other authority from that state which has addressed that issue. Thus, this Court, sitting in diversity, must attempt to predict how the Supreme Court of

Connecticut would decide the issue as presented here. *See, General Accident Ins. Co. v. Gonzales,* 86 F.3d 673 (7th Cir. 1996); *Smith v. Equitable Life Assurance Society,* 67 F.3d 611 (7th Cir.1995). More precisely, this Court must attempt to predict how the Supreme Court of Connecticut would decide the question of whether a seller of a used vehicle who sells the product "as is" and who has not been shown to have repaired, modified, or altered the product in any material way can be held liable under a strict liability theory. This Court is of the view that that question would be answered in the negative by the Connecticut Supreme Court.

Connecticut's Products Liability Act (CPLA) consolidates "all claims or actions brought for personal injury ... caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling any product." Conn.Gen. Stat.Ann. § 52–572m(b). As such, Connecticut merges all product liability claims to include strict liability, breach of warranty, and negligence into one cause of action. The CPLA's purpose was to simplify pleadings, not to abolish common substantive rights. *Lynn v. Haybuster,* 226 Conn. 282, 627 A.2d 1288, 1293 (1993). "Since the CPLA was not meant to eliminate common-law substantive rights but does not itself spell out the elements of the types of claims it consolidates ... the district court [should] assess plaintiffs' theories of recovery in light of the Connecticut common law requirements." *LaMontagne v. E.I. DuPont De Nemours & Co. Inc.,* 41 F.3d 846, 855 (2nd Cir.1994).

■ A cause of action in strict liability under Connecticut law has five essential elements. "In order to recover under a doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation is sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in the condition." *Giglio v. Connecticut Light &*

*Power Co.,* 180 Conn. 230, 429 A.2d 486, 489 (1980).

As the foregoing elements suggest, Connecticut's requirements for establishing a strict liability claim are essentially the same as other jurisdictions which have utilized section 402A of the *Restatement (Second) Tort.* Because Connecticut has not as yet addressed the issue presently before this Court, this Court may look for guidance to other jurisdictions which have addressed the issue under comparable law. *See, Kealoha v. E.I. DuPont De Nemours Co., Inc.,* 82 F.3d 894, 899 (9th Cir.1996); *Gruber v. Owens–Illinois Inc.,* 899 F.2d 1366, 1369 (3rd Cir. 1990).

Unfortunately, there is not a clear consensus among other jurisdictions about whether a seller of used goods should be held liable under a theory of strict liability in tort. For example, the Illinois Supreme Court in *Peterson v. Lou Bachrodt Chevrolet Co.,* 61 Ill.2d 17, 329 N.E.2d 785 (1975), the Oregon Supreme Court in *Tillman v. Vance Equipment Co.,* 286 Or. 747, 596 P.2d 1299 (1979), the California Court of Appeals in *Wilkinson v. Hicks,* 126 Cal.App.3d 515, 179 Cal.Rptr. 5 (1981), and the Florida Court of Appeals in *Fuquay v. Revels Motors, Inc.,* 389 So.2d 1238 (Fla.Ct.App.1980) all held that a seller of used vehicles or equipment should not be held liable under a theory of strict liability in tort. On the other hand, the Arizona Supreme Court in *Jordan v. Sunnyslope Appliance Propane & Plumbing Supplies Co.,* 135 Ariz. 309, 660 P.2d 1236 (1983), the Wisconsin Supreme Court in *Nelson v. Nelson Hardware, Inc.,* 160 Wis.2d 689, 467 N.W.2d 518 (1991) and a New Jersey Superior in *Turner v. International Harvester Co.,* 133 N.J.Super. 277, 336 A.2d 62 (1975) all held that a seller of used goods could be held liable under a theory of strict liability.

■ Recently, the United States District Court for the Western District of Missouri had occasion to predict how the Missouri Supreme Court would decide the issue of whether a seller of used goods should be held liable under a theory of strict liability.[5] After thoroughly reviewing the foregoing authorities, that court, in *Harber v. Altec In-*

5. Interestingly, on at least one occasion, the Connecticut courts have looked for guidance on neg-

ligence principles to Missouri. *See, Sharp v.*

*dustries, Inc.,* 812 F.Supp. 954 (W.D.Mo.) *aff'd,* 5 F.3d 339 (8th Cir.1993), overviewed the policy reasons behind strict liability and found that those policy reasons were not furthered by holding a seller of used goods strictly liable. In predicting that the Missouri Supreme Court would not recognize such a cause of action, the court wrote:

> The court finds that the factors justifying strict liability in other situations do not warrant imposition of strict liability for a dealer in used goods. The only policy rationale that is served by imposing liability in these circumstances is that innocent victims will be compensated. Although this is an important goal of our tort system, it is not the only goal.... The tort system is based on the 'fundamental principal of fairness.' ... Fairness in strict liability is not served by imposing strict liability here. A policy with CERCLA-like tentacles of liability used against these dealers will not improve the manufacture of the goods and will not prevent latent defects from being passed on to consumers. Consumer expectations are already being met in the used-goods market. Furthermore, the dealers in used goods are not well situated to bear the cost of insuring the goods they sell. Imposing strict liability here would risk destroying one of the few truly free markets left. The policy rationales weigh heavily against strict liability in the circumstances of this case.
>
> Based on the discussion above, this court finds that the Missouri Supreme Court would not extend strict liability to include to sellers [sic] of used goods who perform no maintenance, modification or repair on the used products and who successfully disclaim all warranties of title.

*Harber* at 965–66 (internal citations omitted). This Court is in accord with the foregoing language of *Harber* and concludes that if the

Connecticut Supreme Court were presented with the issue, it would not extend strict liability to a seller of a used motor vehicle who did not modify or repair the vehicle in any material respect and who sold the vehicle in an "as is" condition.

Support by analogy for the above conclusion can be found in the recent decision of the United States Court of Appeals for the Second Circuit in *LaMontagne, supra.* There, DuPont was sued under the CPLA on a failure to warn theory after Teflon it had manufactured had been incorporated by another manufacturer into an implant for the temporomandibular joint which later proved to be faulty. Affirming a grant of summary judgment in DuPont's favor, the Second Circuit wrote that "[t]hough the [CPLA] does not specifically describe the boundaries of the seller's duty, any more than the CPLA spells out the elements of any of the causes of actions it was enacted to encompass, the fundamental principle that a seller's duty to warn is premised on the existence of its knowledge or its reason to know of the hazards is evident." *LaMontagne,* 41 F.3d at 859. That is, "nothing in [the CPLA] suggests that a manufacturer of a nondangerous component who does not know and has no reason to know the hazards of the end product that incorporates its component has a duty to warn the ultimate user as to those hazards." *Id.* at 860.

Similarly, nothing in the CPLA or Connecticut case law would suggest that a seller of a used vehicle should be held liable in strict liability where he has not altered, repaired or modified the vehicle in any material respect and where he has sold the vehicle in an "as-is" condition. To hold otherwise in this case would effectively require that the defendant be held responsible for everything that has happened to the truck for over a period of eight year prior to its possession.[6]

---

*Wyatt,* 31 Conn.App. 824, 627 A.2d 1347, 1358 n. 16 (1993) (citing Eighth Circuit case that applied Missouri law).

**6.** Used vehicles, by there very nature are different from new vehicles, and consequently the purchasers of used vehicles should have different expectations. On this score, the following language from the Oregon Supreme Court in *Tillman, supra,* is relevant:

> [H]olding every dealer in used goods responsible regardless of fault for injuries caused by defects in his goods would not only affect the prices of used goods; it would work a significant change in the nature of used-goods markets. Those markets, generally speaking, operate on the apparent assumption that the seller, even though he is in the business of selling such goods, makes no particular representation about their quality simply by offering them for sale.

Were that the case, the only way for the defendant to protect itself from liability for such claims would be for it to dismantle every vehicle it desires to sell to insure not only that prior owners had not altered the vehicle but also to insure that the component parts are put together in accordance with manufacturer's specifications. Summary judgment shall be granted on the strict liability claim.

## C. *Warranty*

In his complaint, plaintiff alleges that defendant warranted that the Kenworth was of merchantable quality and fit for its intended purpose and that defendant breached those warranties. Defendant has moved for summary judgment on this claim contending that under Connecticut law an express warranty does not attach to the sale of a used vehicle where the buyer was permitted to examine and drive the vehicle prior to purchase (*citing, Web Press Services Corp. v. New London Motors, Inc.*, 203 Conn. 342, 525 A.2d 57 (1987)) and any implied warranty is excluded by its sale of the Kenworth "as is" (*citing* Conn.Gen.Stat. § 42A–2–316). In response, plaintiff concedes that "there may be some merit to Damiron's Motion with respect to the breach of warranty claim . . .," (Rec. 66, p. 1), and offers no factual or legal arguments against defendant's motion on that claim. Accordingly summary judgement will be granted on the breach of warranty claim.

> We are of the opinion that the sale of a used product, without more, may not be found to generate the kind of expectations of safety that the courts have held are justifiably created by the introduction of a new product into the stream of commerce.
> *Id.* 596 P.2d at 1303.

7. The Court notes that there is a disagreement between the parties as to the admissibility of some evidence tendered in support of their respective positions. Plaintiff argues that this Court should not rely on the report of defendant's expert Benjamin Riley Vian because that report was not verified. Defendant counters by pointing out that plaintiff is relying on portions of an unsigned deposition given by Albert Morgan.

Plaintiff is of the view that the deficiency in Vian's report precludes the entry of summary judgment on the negligence claims because without that report defendant's have no evidence that

## D. *Negligence*

Under Connecticut law, "[t]he elements of a cause of action for negligence are duty, breach, causation and damages." *Phinney v. Casale*, 40 Conn.App. 495, 671 A.2d 851, 854 (1996) (*citing Doe v. Manheimer*, 212 Conn. 748, 563 A.2d 699 (1989)). Thus, "[a] breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence." *Catz v. Rubenstein*, 201 Conn. 39, 513 A.2d 98, 101 (1986).

In the present matter, defendant has moved for summary judgment on plaintiff's negligence claim on the grounds that there is no evidence to support the conclusion that it breached any duty to the plaintiff. This is so because there is no evidence that it did anything to the rear wheel locking mechanism which failed and there is nothing which would show that any defect in that device would have been obvious on visual inspection.[7]

By way of response, plaintiff argues that there are genuine issues of material fact on these matters which preclude summary judgment. In support of that contention, plaintiff writes as follows:

> [T]here exists a genuine issue of material fact as to the work performed by Damiron on the truck while it was in its possession. Albert Morgan testified in his deposition that at the time he purchased

the defective condition of the truck could not have been discovered as a result of a reasonable inspection. That is simply not true. In his deposition, upon which plaintiff relies for other things, Morgan states that "there's no way you can inspect an axle" and that with respect to the wheel locking mechanisms "[t]here's no way that you can inspect them" without "tearing it [sic] apart." He also testified that "he had never done that" (tear the axle apart during inspection) and he did not "know anyone that ever has." Equally important is the fact that there is no evidence before the Court which would suggest that one can visually inspect the wheel locking mechanism without tearing the axle apart. This disposes of plaintiff's argument that "because there is no evidence establishing whether a reasonable inspection by Damiron would have led to discovery of the defect at issue, a genuine issue of material fact exists on the question of negligence, and Damiron's motion for summary judgment should be denied." (Rec. 66, p. 6).

the truck, the wheels on the rear axle which is at issue in this case had new brakes..... In fact, Morgan testified that the brakes had been replaced somewhere within a few months prior to the time he purchased the truck. A reasonable inference that may be drawn from this testimony is that Damiron did work on the brakes on the rear axle which is at issue in this case.

Moreover, Morgan questioned what use the vehicle was put to during the 19–day period between the time of his original inspection of the vehicle and the time he picked the vehicle up on September 19, 1993, only three days before the accident in question. In fact, Morgan testified that the truck could have been out on the road during this period of time and something could have happened to the truck in the interim.

(Rec. 66, pp. 5–6) (citation to record omitted).

The foregoing does nothing to establish a genuine issue of material fact because plaintiff offers nothing but conjecture and speculation. As indicated in this Court's litany regarding the standards governing summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* Plaintiff has failed to do so with respect to the negligence claim.

 Morgan's suggestion that the brakes were relatively new does nothing to show that defendant replaced the rear brakes or did anything to the rear axle.[8] To the contrary, the only evidence before the Court which is not based on speculation is a statement from defendant's vice-president · who specifically averred that the repairs that were done by defendant did not involve the rear axle.

Similarly, Morgan's speculation about what may have been done to the truck during the

nineteen day period between purchase and pickup is nothing more than that—speculation. For all anyone knows, to paraphrase Chief Judge Posner in *Welge v. Planters Lifesavers Co.*, 17 F.3d 209, 211 (7th Cir. 1994) elves may have played ninepins in the Kenworth while it was on Damiron's lot.

In sum, there is no evidence before the Court which would show that defendant worked on the rear axle of the truck or that a problem with the wheel locking assembly would be apparent on visual inspection. Accordingly, defendant's motion for summary judgment on plaintiff's negligence claim will be granted.

### *Conclusion*

On the basis of the foregoing, the motion for partial summary judgment filed by the plaintiff David King on April 29, 1996 is DENIED. The motion for summary judgment filed by defendant Damiron Corporation on April 30, 1996 is GRANTED.

---

8. Interestingly, Morgan also testified that the brakes could be changed without exposing the wheel locking assembly.