**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

JUN 5 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SANDRA JAUREGUI, an individual, on
behalf of herself and all statutory
beneficiaries of deceased Jose Luis Jauregui
Soto,

  Plaintiff - Appellant,

 v.

PACCAR, INC., a Delaware corporation;
BENDIX COMMERCIAL VEHICLE
SYSTEMS, LLC, a Delaware limited
liability company; DAIMLER TRUCKS
NORTH AMERICA LLC, a Delaware
limited liability company,

  Defendants - Appellees.

No. 25-2654

D.C. No.
2:23-cv-00729-JJT

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted May 19, 2026
Phoenix, Arizona

Before: GOULD, M. SMITH, and HURWITZ, Circuit Judges.

 Sandra Jauregui ("Plaintiff") sued Daimler Truck North America LLC

---

  * This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

("DTNA"), PACCAR, Inc., and Bendix Commercial Vehicle Systems, LLC, after her husband died as a result of a collision between the PACCAR tractor-trailer her husband was driving and a DTNA tractor-trailer that had stalled in the middle of a highway. Plaintiff asserts that design and manufacturing defects in the DTNA vehicle caused it to stall and that a defective Bendix-designed advanced driver assistance system ("ADAS") in the PACCAR vehicle failed to prevent the accident. The district court granted summary judgment to the three defendants, and Plaintiff timely appealed.[1]

We have jurisdiction under 28 U.S.C. § 1291. We review a summary judgment de novo, *Day v. Henry*, 152 F.4th 961, 967 (9th Cir. 2025), and a decision to exclude expert testimony for abuse of discretion, *United States v. Aubrey*, 800 F.3d 1115, 1129 (9th Cir. 2015). We affirm.

1. Plaintiff did not present evidence establishing that the DTNA vehicle "was in a defective condition that made it unreasonably dangerous . . . when the product left the defendant's control." *Dillon v. Zeneca Corp.*, 42 P.3d 598, 603 (Ariz. Ct. App. 2002). She contends that applying the consumer expectations test, *see Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 962 (Ariz. Ct. App. 2003), a jury could conclude

---

[1] The operative complaint also asserted claims for negligence, but any issue related to the dismissal of those claims has been "doubly forfeited, as it was not raised in the Plaintiff['s] district court briefing or in the[] opening brief." *Stockton v. Brown*, 152 F.4th 1124, 1138 n.6 (9th Cir. 2025).

the truck was defective because it stalled and there is no other good explanation. But "when a product fails it does not automatically raise a presumption of a legal defect." *Rix v. Reeves*, 532 P.2d 185, 187 (Ariz. Ct. App. 1975). To be sure, the unexplained failure of a new or lightly used product may establish a defect. *See, e,g.*, *Dietz v. Waller*, 685 P.2d 744, 746, 748 (Ariz. 1984) (finding that a "boat [that] had seen only approximately ten hours of use" was defective when it "broke apart"); *Mineer v. Atlas Tire Co.*, 806 P.2d 904, 905 (Ariz. Ct. App. 1990) (involving a "brand new tire . . . [that] blew over the rim" soon after it was mounted and seriously injured the plaintiff). But those cases are of no aid to Plaintiff, as the DTNA vehicle had been driven approximately 121,000 miles over some three years and had not previously stalled.

2. The district court did not abuse its discretion in excluding part of Tony Gioutsos's proposed expert testimony. Gioutsos opined that the Bendix ADAS failed to alert Plaintiff's husband to the stalled DTNA truck and brake the PACCAR vehicle because of a faulty algorithm. But Gioutsos did not review the algorithm's code, and instead concluded the code was defective simply because the system did not activate. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the

expert.").[2]

3. Plaintiff also failed to establish what consumers would expect about the ADAS. *See Golonka*, 65 P.3d at 962 ("In design defect cases, however, the consumer expectation test has limited utility as the consumer would not know what to expect, because he would have no idea how safe the product could be made." (cleaned up)); *cf. Brethauer v. Gen. Motors Corp.*, 211 P.3d 1176, 1183-85 (Ariz. Ct. App. 2009) (finding that "consumers have expectations about how safely seatbelts will perform" because they are "educated from a young age," "use seatbelts daily and are familiar with their single, safety-related function: keeping belted passengers restrained").

Plaintiff primarily relied on the ADAS Operator's Manual to establish consumer expectations. Although Plaintiff cited passages from the ADAS Operator's Manual stating that the system "can decelerate the vehicle by up to 50 mph," and is "most useful when approaching a stalled vehicle by a distracted driver at night," the manual also warns that "[d]ue to the inherent limitations of radar and camera technology, the enhanced collision mitigation technology—on rare occasions—<u>may not</u> detect moving vehicles or stationary vehicles in your vehicle's

---

[2] Moreover, Gioutsos's report initially stated that "[t]he failure was not because of the inadequacy of the camera, radar or computer processing capabilities." But later in the same report, while discussing the ADAS's camera technology, he opined that it was "possible" the camera "had trouble recognizing the box trailer with flashing hazard lights," and suggested that had Bendix used newer camera technology, there would have been no issue. This inconsistency supports the district court's decision to exclude Gioutsos's testimony.

lane of travel." The manual therefore does not establish the expectation that the system will always warn the driver or decelerate the vehicle when a stalled vehicle is encountered, and indeed cautions that the ultimate responsibility for recognizing such hazards rests with the driver.

4. Plaintiff also failed to describe the ADAS with enough specificity to allow performance of the required risk/benefit analysis. *See Golonka*, 65 P.3d at 962 ("[W]hen application of the consumer expectation test is unfeasible or uncertain in design defect cases, courts additionally or alternatively employ the risk/benefit analysis to determine whether a design is defective and unreasonably dangerous."). She argues the ADAS is defective because it was designed to limit false alerts to one in 1,000 miles and false braking to one in 5,000 miles. But she failed to explain why that design is unreasonable, present evidence that it departs from industry or regulatory norms, or identify a reasonable alternative. *See id.* at 962 n.2 (noting that one factor in the risk/benefit analysis is "the availability of other and safer products to meet the same need" (cleaned up)).

**AFFIRMED.**