**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4578-15T2

MADISON MONE,

    Plaintiff-Appellant,

v.

KIM GRAZIADEI,

    Defendant-Respondent,

and

GIRLS SOFTBALL LEAGUE OF
WESTFIELD, INC.,

    Defendant.

_____

Argued October 2, 2017 — Decided  October 30, 2017

Before Judges O'Connor and Vernoia.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Docket No.
L-3240-13.

Ralph P. Ferrara argued the cause for
appellant (Ferrara Law Group, PC, attorneys;
Mr. Ferrara and Anthony A. Skalski, on the
brief).

                    Robert F. Ball argued the cause for
                    respondent (Weber Gallagher, attorney; Mr.
                    Ball on the brief).

PER CURIAM

     In this personal injury action, plaintiff Madison Mone was

injured just before she and her team were to play in a softball

game for defendant Girls Softball League of Westfield, Inc.

(League).  Defendant Kim Graziadei (coach) was the team's coach.

Plaintiff filed a complaint alleging defendants had been both

negligent and grossly negligent for failing to properly instruct

and supervise plaintiff at the time she was injured.  She

appeals from a May 13, 2016 order granting defendants summary

judgment dismissal.  After reviewing the record and applicable

legal principles, we reverse.

                                  I

     The pertinent facts in the motion record, which we present

in the light most favorable to plaintiff, are as follows.  In

June 2007, plaintiff, then thirteen years of age, was a member

of and played softball for the League.  According to plaintiff's

deposition testimony, just before one of the games, the coach

selected her to be the catcher in the upcoming game.

     Plaintiff testified one of her responsibilities as catcher

was to warm up the pitcher before a game; specifically, as

catcher, she caught the practice balls the pitcher threw in

                                  2

order to warm up.  After the coach instructed plaintiff to warm up the pitcher, plaintiff and the pitcher practiced in an area adjacent to but not on the field.  During the warm-up, plaintiff did not wear a face mask, although she had donned shin guards and "chest protection."  One ball the pitcher threw to plaintiff hit her in the face, knocking out a tooth and injuring her jaw and other teeth.

Plaintiff testified the coach previously had instructed the players to wear "full equipment" when they were either the catcher during a game or warming up a pitcher <u>on</u> the field before it.  Plaintiff understood the term "equipment" to mean a face mask, helmet, shin guards, and chest protection.  In response to three questions posed to her during her deposition, plaintiff clearly stated the coach never told the players they had to wear the subject equipment when practicing <u>off</u> the field.

After providing such testimony, the following exchange took place between plaintiff and defense counsel:

> [DEFENSE COUNSEL:] Did your coach ever
> instruct you did not have to wear equipment
> when you warmed up a softball pitcher prior
> to a game?
>
> [PLAINTIFF:] I don't recall.
>
> [DEFENSE COUNSEL:] Do you recall if she told
> you were supposed to wear equipment prior to
> warming up a pitcher prior to a game?

3

[PLAINTIFF:] Can you repeat that?

[DEFENSE COUNSEL:] Sure.  I'll withdraw that question.  <u>You just told me that you don't recall if your coach told you to wear equipment while you were warming up a pitcher off the field?</u>

[PLAINTIFF:] <u>Yes</u>.

[Emphasis supplied.]

During her deposition the coach testified that, on the first day of practice, she instructed all players to wear protective equipment when warming up a pitcher.  Her testimony did not clarify whether she also advised the players to wear such protective gear even when they were practicing off the field.  The coach also claimed that, on the day of the incident, plaintiff had not been selected to be the catcher and the player plaintiff warmed up had not been chosen to be the pitcher, either.  The coach maintained plaintiff and the other player merely walked off into "foul territory," where the player pitched balls at plaintiff, who served as her catcher.

After the close of discovery, defendants moved for and the court granted summary judgment dismissal.  The court cited a portion of plaintiff's deposition testimony in which she stated the coach had advised the players to put on the subject safety equipment before warming up a pitcher.  The court found such statement to be an admission plaintiff knew to put on the safety

4

equipment when warming up a pitcher even when off of the field. However, such testimony referred to the coach's instruction to wear such equipment when warming up the pitcher on the field. There is no dispute the coach had instructed the players, when designated a catcher, to wear all safety equipment when warming up the pitcher on the field and during the game. The issue was whether the coach had instructed the players to wear the safety equipment when warming up a pitcher off the field.

The court also relied upon plaintiff's affirmative response to the last question in the passage quoted above to find there was no dispute the coach had told the players to wear the equipment even when acting as a catcher off the field. The pivotal question was: "You just told me that you don't recall if your coach told you to wear equipment while you were warming up a pitcher off the field?"

Although defense counsel mischaracterized plaintiff's testimony, she answered in the affirmative. By doing so she in effect acknowledged she had just testified she did not remember the coach telling her to wear the equipment when warming up a pitcher off the field. Relying upon plaintiff's response to this question and the coach's claim she had instructed all players acting as a catcher to don safety equipment when warming up a pitcher, the court determined there was no evidence to

5

refute the coach's assertion plaintiff knew she was to wear the subject safety equipment when warming up a pitcher, regardless of her location.

The court also noted the coach's conduct had to be measured under the "heightened standard" of gross negligence. The court did not cite the applicable statute, but it is not disputed N.J.S.A. 2A:62A-6 applies to this matter and defendants' conduct is to be evaluated under the standard of gross negligence, not negligence.[1]

## II

On appeal, plaintiff's principal contention is the trial court erred when it determined there was no question plaintiff had been informed she must wear full protective gear when warming up a pitcher off the field. Plaintiff argues the court improperly engaged in a credibility determination when it rejected those portions of her deposition testimony in which she unequivocally stated the coach had never instructed the players to wear the safety equipment when warming up a pitcher off the field. Plaintiff claims it was inappropriate for the court to

---

[1] This statute provides immunity from tort liability to volunteer athletic coaches who provide their services to nonprofit sports organizations, subject to the conditions and exceptions in such statute. See N.J.S.A. 2A:62A-6(c). The trial court did not make a finding any of the conditions or exceptions in the statute applied to the coach.

6

rely upon her response to a question that mischaracterized her previous testimony even though, when read literally, it indicated she had testified she had been advised to wear such gear under these circumstances.

When considering a challenge to the grant of a summary judgment motion, like the trial court, we "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). The trial court may not resolve contested factual issues; it may only determine whether there are any genuine factual disputes. See Agurto v. Guhr, 381 N.J. Super. 519, 525 (App. Div. 2005).

If there are materially disputed facts, a motion for summary judgment may not be granted. Brill, supra, 142 N.J. at 540. A court may grant such motion only if the evidence in the record "'is so one-sided that one party must prevail as a matter of law.'" Id. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 214 (1986)). Similarly, a party may defeat a motion for summary judgment by demonstrating the evidential materials relied upon

7

by the moving party, considered in light of the applicable burden of proof, raise sufficient credibility issues "to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 523.

Here, viewing the facts in the light most favorable to plaintiff, we conclude the evidential materials defendants relied upon to secure summary judgment raise credibility issues that should have resulted in the denial of their motion. There is no question the coach testified she informed the players they were to wear full protective equipment when serving as the catcher for a pitcher warming up before a game, but there is a question about the content of plaintiff's deposition testimony and whether she disputed the coach's factual claim.

More than once during her deposition, plaintiff testified the coach had not instructed the players to wear the safety equipment when off the field. Then, later in her deposition, in response to a question that mischaracterized her testimony, plaintiff testified the coach did tell her to wear such gear when warming up a pitcher off the field. In our view, the circumstances under which the latter testimony — which was diametrically opposed to her previous testimony — was given raises the issue whether she misheard or misunderstood the subject question. After all, plaintiff's response to the

8

subject question indicates she had previously testified to and affirmed the assumed fact included in the question when, in fact, she had not done so at all. The assumed fact was that she did not recall the coach telling her to wear the equipment while warming up a pitcher off the field. However, her previous testimony had been the coach had not instructed the players they were required to wear protective gear when warming up a pitcher off-field.

The trial court not only failed to appreciate plaintiff may well have misheard the question, but also went a step further and decided this testimony was more credible than her testimony to the contrary. It was not the court's function on summary judgment to weigh the evidence and determine the truth of conflicting evidence; the court's obligation was only to identify the existence of such genuine disputes. Id. at 540. The discrepancy in plaintiff's testimony warrants resolution by the fact finder and not the court on a summary judgment motion. Accordingly, we reverse the grant of summary judgment dismissal.

In addition, even if plaintiff testified she was changing her testimony and intended to say the coach had advised the players to wear the safety equipment even when warming up a pitcher off the field, there remains the issue of the coach's supervision, one of the allegations in the complaint. If

9

plaintiff knew she was required to but failed to wear the equipment when warming up the pitcher off-field, the question remains whether the coach was grossly negligent for failing to properly supervise her.

The coach claims plaintiff had not been chosen to be the catcher for the upcoming game that day and the player she warmed up had not been designated the pitcher, but this factual claim is also disputed. Moreover, the coach's responsibility for the players, whether they are on or off the field during a practice and a game, remains a factual question to be resolved. Of course, plaintiff's comparative negligence is a factor, but only the fact finder can determine if plaintiff's comparative negligence so far exceeded the coach's alleged gross negligence so as to absolve the coach of all liability.

The trial court also found that, as a matter of law, none of "the proofs adduced . . . remotely established that any reasonable fact finder could . . . find [the coach was grossly negligent]."

In Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344 (2016), our Supreme Court explicitly adopted the definition of "gross negligence" contained in the New Jersey Civil Model Jury Charge: "Gross negligence . . . is more than ordinary negligence, but less than willful or intentional misconduct,"

Model Jury Charge (Civil) 5.12. Id. at 364. The difference between negligence and gross negligence "is a matter of degree." Id. at 366. "[G]ross negligence is an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission." Id. at 364-365.

Here, according to the coach, the players were required to wear the subject safety equipment when they served as a catcher. Viewing the evidence in the light most favorable to plaintiff, a rational fact finder could conclude the coach's conduct constituted gross negligence if the coach, as plaintiff's supervisor, failed to ensure plaintiff was wearing a safety mask at the time she was warming up the pitcher. Therefore, the trial court erred when it determined that, as a matter of law, the coach was not grossly negligent.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11